**UNITED STATES of America, Plaintiff,**

**v.**

**COUNTY COMMISSION, HALE COUNTY, ALABAMA, et al., Defendants.**

**Civ. A. No. 76–403–P.**

United States District Court,
S. D. Alabama, S. D.

Oct. 18, 1976.

Supplemental Opinion and Order
Jan. 24, 1977.

Judgment Affirmed March 21, 1977.
See 97 S.Ct. 1540.

C. S. White-Spunner, Jr., U. S. Atty., Mobile, Ala., Gerald W. Jones, Atty., Dept. of Justice, Washington, D. C., James M. Fallon, Atty., Dept. of Justice, Washington, D. C.

W. H. Knight, Greensboro, Ala., W. W. Dinning, Demopolis, Ala., W. McLean Pitts, Cartledge W. Blackwell, Jr., Selma, Ala., for defendants.

## OPINION AND ORDER

Before GODBOLD, Circuit Judge, and HAND and PITTMAN, JJ.

This action was commenced by the Attorney General on behalf of the United States of America, pursuant to the Voting Rights Act of 1965, 42 U.S.C. §§ 1973, 1973c, 1973j(d), and 28 U.S.C. § 2201, to enforce rights guaranteed by the Fourteenth and Fifteenth Amendments.

This court has jurisdiction pursuant to 42 U.S.C. § 1973j(f) and 28 U.S.C. § 1345.

This court is properly convened as a District Court of three judges pursuant to 42 U.S.C. § 1973c and 28 U.S.C. § 2284.

It is alleged that Hale County, Alabama, is a political and geographical subdivision of the State of Alabama and the defendant County Commission of Hale County is a governing body established under the laws of the State of Alabama responsible for exercising the powers and duties inherent in conducting county business. The Probate Judge defendant, the County Commissioners, and Chairman of the Hale County Democratic Executive Committee are properly before the court.

The plaintiff claims that 42 U.S.C. § 1973 (the Voting Rights Act of 1965), and in particular, Section 4 (§ 1973b), applies to Hale County, Alabama, and that Hale County failed to follow the procedures as set out in Section 5 (§ 1973c), and that the failure of the defendants to meet the pre-clearance requirements of Section 5 (§ 1973c) with respect to certain changes in the method of electing the County Commissioners, were and are therefore unlawful. The plaintiffs seek to have this court enjoin the November 2, 1976 election of the County Commissioners under the at-large plan enacted subsequent to the Voting Rights Act of 1965 and grant such additional relief as the interests of justice may require.

The parties prior to the hearing presented the court a stipulation which set out the facts upon which the case was to be submitted and defined the legal issue in dispute (see plaintiffs' Exhibit A). Pursuant to that stipulation, the court makes the following findings and the course of action to be pursued concerning the November 2, 1976 election.

1. Hale County, Alabama, is a political and geographical subdivision of the State of Alabama and is organized and exists under the laws of that State.

2. On August 6, 1965, the Attorney General of the United States made a determination pursuant to Section 4(b)(1) of the Voting Rights Act of 1965, that the State of Alabama maintained a test or device on November 1, 1964, as defined in Section 4(c) of the Act. (See Stipulation, Exhibit 1).

3. On August 6, 1965, the Director of the Bureau of the Census, United States Department of Commerce, made a determination that less than 50% (fifty percent) of the persons of voting age residing in the State of Alabama voted in the presidential election of November, 1964. Said determination, as well as the determination made in paragraph 2, was published in the Feder-

al Register on Saturday, August 7, 1965. (See Stipulation, Exhibit 1).

4. No other determinations have been made by the Attorney General of the United States or the Director of the Census under the said provision of the Voting Rights Act of 1965 which would have any application to this litigation.

5. Defendants Clifton Abernathy, Harry Drake, Goldsby Tucker, and John Stokes are members of the Hale County Commission. The term of office of Commissioners Drake and Tucker expire on the first Monday after the second Tuesday in January, 1977; the terms of Commissioners Abernathy and Stokes expire on the first Monday after the second Tuesday in January, 1979.

6. Defendant Richard M. Avery is Probate Judge of Hale County, Alabama. As such, he is an ex-officio member and Chairman of the Hale County Commission.

7. W. H. Knight is Chairman of the Hale County Democratic Executive Committee.

8. Prior to November 1, 1964, the Commissioners of Hale County were elected by district pursuant to Act No. 61 (H. 209), Acts of Alabama 1953, Vol. 1, p. 89 as amended by Act No. 370, Acts of Alabama 1959, Vol. II, p. 961. Alabama Act No. 370 (1959) provided for a referendum to be held to determine whether Act No. 370 should be adopted.

9. A referendum was held on November 8, 1960, at which time Act No. 370, supra, was adopted. (See Stipulation, Exhibit 2).

10. Act No. 320 (H. 764) of the 1965 session of the Alabama Legislature, Acts of Alabama, 1965, Vol. 1, p. 439, provided for a referendum to be held to determine whether to change the method of electing County Commissioners from a district to an at-large basis.

11. A referendum was held on November 30, 1965, at which time Act No. 320, supra, was adopted. (See Stipulation, Exhibit 3).

12. Subsequent to the enactment of Act No. 320 in the Regular Session of the Legis-

lature of Alabama in 1965, the Alabama Legislature enacted the following two enactments:

Act No. 2022, Regular Session, 1971 (providing for at-large election with no requirement of residency other than that the candidate be a resident of Hale County, Alabama.)

Act No. 620, Regular Session, 1973 (providing for at-large election—district residence; residency districts different from those provided for in the above referenced 1965 enactment.) (See Stipulation, Exhibits 4 and 5).

13. Neither the 1965, 1971, nor 1973 acts referred to above, nor the procedure of electing County Commissioners at-large referred to in each of these three acts has met the preclearance requirements of Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c. (See Stipulation, Exhibit 6).

14. In May and November, respectively, 1966, and every two years thereafter, primary and general elections for County Commissioner have been held on an at-large basis.

15. The changes referred to in Paragraphs 10 and 11 above, and the manner of electing County Commissioners from a district to an at-large basis constitutes a change affecting voting within the meaning of Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c.

16. No action has been instituted in the United States District Court for the District of Columbia pursuant to Section 5 of the Voting Rights Act of 1965, as amended, for a declaratory judgment that the post-1964 change from electing Commissioners by district to at-large neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race or color.

17. In November, 1974, a general election was conducted at which Commissioners for places 1 and 4 were elected. In May, 1976, a primary election was conducted in Hale County to elect candidates to run for Commissioner places 2 and 3. The 1974 general and the 1976 primary elections were conducted pursuant to the at-large system

of election. Another general election is scheduled to be held on November 2, 1976. The persons elected, including two members of the County Commission, in the general election are scheduled to hold office through the first Monday after the second Tuesday in January, 1981.

18. On April 23, 1976, the Assistant Attorney General for the Civil Rights Division, on behalf of the Attorney General of the United States, interposed an objection to Hale County's change from the method of electing County Commissioners by district prior to November 1, 1964, to a method of electing County Commissioners at-large in 1966, and, in said letter the Assistant Attorney General requested the Defendant, Hale County, to provide more information to evaluate the residency districts, as provided for in the 1973 enactment. (See Stipulations, Exhibit 7).

19. The provisions of 42 U.S.C. § 1973 are applicable to Hale County, Alabama, and the failure to comply with Section 5 of the Voting Rights Act of 1965 (42 U.S.C. § 1973c), as amended, and as described in the preceding paragraph, renders the post-1964 change of electing County Commissioners to an at-large basis legally unenforceable.[1]

Now, therefore, it is hereby ORDERED, ADJUDGED and DECREED:

That this court concludes that the provisions of 42 U.S.C. § 1973 are applicable to Hale County, Alabama, and the election procedures for County Commissioners in that county effected by legislative enactments as hereinafter set out since the passage of the 1965 Voting Rights Act are covered by Section 1973c (Section 5 of the Voting Rights Act of 1965)[2] and that the following conclusions of law result therefrom:

■ a. That defendants failed to meet the preclearance requirements of Section 5 of the Voting Rights Act of 1965 with respect to the 1965, 1971, and 1973 enactments, and thus said acts are of no force or effect and that any elections conducted pursuant to the provisions of said act are and were unlawful.

■ b. That the invalidity of all past general elections held for county commissioner pursuant to the 1965, 1971, and 1973 enactments shall not affect the validity of action already taken or to be taken by the officials so elected until their successors have been lawfully elected.

■ c. That the effect of declaring the method of electing county commissioners on at-large basis as set out in the 1965, 1971, and 1973 enactments to be unlawful, requires the defendants to utilize the method of electing county commissioners by district as set forth in Act No. 370, Acts of Alabama 1959, Vol. II, p. 961, unless and until such time as the Attorney General or the District Court of the District of Columbia determines otherwise.

This court further ORDERS, ADJUDGES and DECREES that the following course of action concerning the November 2, 1976 election is to be followed:

(1) That the November 2, 1976 election be held as scheduled; and that the two persons elected as Commissioners in said election and the other two members of the Hale County Commission shall serve provisionally pending the further orders and decrees of this court, and vested with all the power, authority, and duties accorded by law.

(2) That the defendants shall file with the Attorney General of the United States within fifteen days a letter submitting the 1965, 1971, and 1973 enactments, and including all information requested by the Attorney General of the United States in his letter of April 23, 1976. (See Stipulation, Exhibit 7).

(3) That the Attorney General of the United States shall treat the submission of said acts referred to in paragraph 2, and the response to the request for more information, of April 23, 1976, on an expedited basis

---

1. See Footnote 2, *infra*.

2. An opinion on this conclusion will follow in the near future.

and respond as soon as possible to the defendants with copies to this court.

(4) That the defendants, should they receive an answer objecting to the said submission, shall, if they desire, within thirty days of receipt of such answer, file with the United States District Court for the District of Columbia, an action under the provisions of 42 U.S.C. § 1973c. The parties are to advise this court within sixty (60) days of any action taken by the Attorney General or by the United States District Court for the District of Columbia.

(5) Upon defendants' failure to file such an action within said time period, or upon a determination of such an action which neither reverses the decision of the Attorney General nor upholds the constitutionality of the 1973 Act, the parties agree that a prompt election shall be held for members of the Hale County Commission by district.

The court retains jurisdiction of this cause for whatever further relief may be necessary.

## SUPPLEMENT TO OPINION AND ORDER DATED OCTOBER 18, 1976

On the 18th day of October, 1976, this court rendered an opinion and order in this cause. The court stated:

1. Section 1973b(b) of 42 U.S.C. states:

"**Required factual determinations necessary to allow suspension of compliance with tests and devices; publication in Federal Register**

(b) The provisions of subsection (a) of this section shall apply in any State or in any political subdivision of a state which (1) the Attorney General determines maintained on November 1, 1964, any test or device, and with respect to which (2) the Director of the Census determines that less than 50 per centum of the persons of voting age residing therein were registered on November 1, 1964, or that less than 50 per centum of such persons voted in the presidential election of November 1964. On and after August 6, 1970, in addition to any State or political subdivision of a State determined to be subject to subsection (a) of this section pursuant to the previous sentence, the provisions of subsection (a) of this section shall apply in any State or any political subdivision of a State which (i) the Attorney General determines maintained on November 1, 1968, any test or device, and with respect to which (ii) the Director of the Census determines that less

That this court concludes that the provisions of 42 U.S.C. § 1973 are applicable to Hale County, Alabama, and the election procedures for County Commissioners in that county effected by legislative enactments as hereinafter set out since the passage of the 1965 Voting Rights Act are covered by Section 1973c (Section 5 of the Voting Rights Act of 1965)[2] . . .

[2] An opinion on this conclusion will follow in the near future.

The following is the opinion indicated in the footnote.

The defendants, County Commission, Hale County, Alabama, et al., contend that the Voting Rights Act of 1965 has no application to the Hale County Commission. They submit "that the failure of the Attorney General of the United States and the Director of the Census to designate by publication in the Federal Register Hale County, Alabama, as a political subdivision under Section 1973b(b)" precludes applying Section 5 and other provisions of the Voting Rights Act of 1965 to Hale County.[1]

Plaintiffs counter that the designation of a state automatically subjects all political subdivisions in that state to the preclearance requirements of Section 5 of the Act.

than 50 per centum of the persons of voting age residing therein were registered on November 1, 1968, or that less than 50 per centum of such persons voted in the presidential election of November 1968. On and after August 6, 1975, in addition to any State or political subdivision of a State determined to be subject to subsection (a) of this section pursuant to the previous two sentences, the provisions of subsection (a) of this section shall apply in any State or any political subdivision of a State which (i) the Attorney General determines maintained on November 1, 1972, any test or device, and with respect to which (ii) the Director of the Census determines that less than 50 per centum of the citizens of voting age were registered on November 1, 1972, or that less than 50 per centum of such persons voted in the Presidential election of November 1972. A determination or certification of the Attorney General or of the Director of the Census under this section or under Section 1973d or 1973k of this title shall not be reviewable in any court and shall be effective upon publication in the Federal Register."

The parties do not dispute that Alabama is a political subdivision as defined in Section 1973*l*(c)(2):

(2) The term "political subdivision" shall mean any county or parish, except that where registration for voting is not conducted under the supervision of a county or parish, the term shall include any other subdivision of a State which conducts registration for voting.

Alabama was designated as one of the seven states which came within the above statutory formula concerning Section 5 coverage. 30 Fed.Reg. 1897 (1965).

The legislative history of the Voting Rights Act, as well as subsequent cases dealing with its interpretation and enforcement makes it clear that the August 7, 1965, designation applied to those states so designated including all of its political subdivisions. The House Majority Report (Judiciary Committee) No. 439, June 1, 1965, in discussing subsection 4(b)(1) and 4(b)(2), stated:

4(b)(1)—This is the first of the determinations which must be made before the provisions of subsection 4(a) become operative. The Attorney General must determine that a State or any political subdivision of a State maintained any test or device on November 1, 1964, as a qualification for voting.

4(b)(2)—This subsection sets forth the determinations which the Director of the Census must make before the provisions of subsection 4(a) become operative. The

See also § 1973c:

"§ 1973c. Alteration of voting qualifications and procedures; action by state or political subdivision for declaratory judgment of no denial or abridgement of voting rights; three-judge district court, appeal to Supreme Court

Whenever a State or political subdivision with respect to which the prohibitions set forth in section 1973b(a) of this title based upon determinations made under the first sentence of section 1973b(b) of this title are in effect shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964, or whenever a State or political subdivision with respect to which the prohibitions set forth in section 1973b(a) of this title based upon determinations made under the second sentence of section 1973b(b) of this title are in effect shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1968, or whenever a State or political subdivision with respect to which the prohibitions set forth in section 1973b(a) of this title based upon determinations made under the third sentence of section 1973b(b) of this title are in effect shall enact or seek to administer any voting qualification or prerequisite to voting or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1972, such State or subdivision may institute an action in the United States District Court for the District of Columbia for a declaratory judgment that such qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color, or in contravention of the guarantees set forth in section 1973b(f)(2) of this title, and unless and until the court enters such judgment no person shall be denied the right to vote for failure to comply with such qualification, prerequisite, standard, practice, or procedure: *Provided,* That such qualification, prerequisite, standard, practice, or procedure may be enforced without such proceedings if the qualification, prerequisite, standard, practice, or procedure has been submitted by the chief legal officer or other appropriate official of such State or subdivision to the Attorney General and the Attorney General has not interposed an objection within sixty days after such submission, or upon good cause shown, to facilitate an expedited approval within sixty days after such submission, the Attorney General has affirmatively indicated that such objection will not be made. Neither an affirmative indication by the Attorney General that no objection will be made, nor the Attorney General's failure to object, nor a declaratory judgment entered under this section shall bar a subsequent action to enjoin enforcement of such qualification, prerequisite, standard, practice, or procedure. In the event the Attorney General affirmatively indicates that no objection will be made within the sixty-day period following receipt of a submission, the Attorney General may reserve the right to reexamine the submission if additional information comes to his attention during the remainder of the sixty-day period which would otherwise require objection in accordance with this section. Any action under this section shall be heard and determined by a court of three judges in accordance with the provisions of section 2284 of Title 28 and any appeal shall lie to the Supreme Court.

As amended Pub.L. 94–73, Title II, §§ 204, 206, Title IV, § 405, Aug. 6, 1975, 89 Stat. 402, 404."

Director of the Census must determine that less than 50 per centum of the persons of voting age residing in any State or any political subdivision of a State were registered to vote on November 1, 1964, or voted in the presidential election of 1964. The vote in the presidential election of 1964 is the vote cast for the presidential candidates. *Where an entire State falls within this subsection, so does each and every political subdivision within that State.* (Emphasis added.) U.S. Code Cong. & Admin.News, 89th Cong., 1965, Vol. II, p. 2456.

Twelve members of the Senate Judiciary Committee made substantially the same point in referring to Subsection 4(b)(2):

This subsection [4(b)(2)] sets forth the two determinations which the Director of the Census must make under the first formula before the provisions of subsection 4(a) become operative:

(a) First, the Director of the Census must determine that less than 50 percent of the persons of voting age, other than aliens and persons in active military service and their dependents, residing in any State or any political subdivision of a State were registered to vote on November 1, 1964, or voted in the presidential election of 1964. The exclusion from voting age population of aliens and military persons was added by the committee. The vote in the presidential election of 1964 is the vote cast for the presidential candidates. *Where an entire State falls within this subsection, so does each and every political subdivision within that State.* (Emphasis added.)

(b) Second, the Director of the Census must determine that, according to the 1960 Census, more than 20 percent of the persons of voting age were nonwhite in any State or political subdivision of a State. *Where an entire State falls within this subsection, so does each political subdivision within that State.* (Emphasis added.) This determination was not required in the bill as introduced. U.S. Code Cong. & Admin.News, 89th Cong., 1965, Vol. II, pp. 2560, 2561.

The treatment of cases arising under the Voting Rights Act by both the Supreme Court and the lower federal courts strongly suggests that defendants' interpretation cannot be sustained. The Supreme Court has found that Congress intended that Section 5 have the "broadest possible scope" and that it "reach any state enactment which altered the election law of a covered State in even a minor way." *Allen v. State Board of Elections,* 393 U.S. 544, at 566–567, 89 S.Ct. 817, at 832, 22 L.Ed.2d 1 (1969). The central issue in *Allen* was the coverage by Section 5, including coverage of two counties in the State of Mississippi. The Supreme Court stated that ". . . the balance of legislative history . . . indicates that Sec. 5 applies to these cases." 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d at 20.

In *Perkins v. Mathews,* 400 U.S. 379, 91 S.Ct. 431, 27 L.Ed.2d 476 (1971), a suit involving changes by the City of Canton, Mississippi, in boundary lines, polling places, and electoral methods, the Supreme Court declared that, "Mississippi and its subdivisions have been determined to be covered by the [Voting Rights] Act. 30 Fed.Reg. 9897 (August 6, 1965)," 400 U.S. at 382, 91 S.Ct. at 433, 27 L.Ed.2d at 481, n. 2, even though only the State of Mississippi was designated by the Attorney General and the Director of the Census. More recently, in *Beer v. United States,* 425 U.S. 130, 96 S.Ct. 1357, 47 L.Ed.2d 629 (1976), a case involving a reapportionment plan for the City of New Orleans, the Supreme Court reiterated that the coverage of the preclearance requirements of the Act applies to all political subdivisions of a designated state when it said, "Louisiana and its political subdivisions are subject to the provisions of § 4 [of the Act]." (cite omitted) 425 U.S. at 133, 96 S.Ct. at 1360, 47 L.Ed.2d at 635, n. 2.

Indeed, the affected jurisdictions themselves have often at least impliedly conceded that designation of a state is tantamount to designation of all political subdivisions within that state.

In *U. S. v. Garner,* 349 F.Supp. 1054 (N.D.Ga.1972), a three-judge district court held that where the City of Jonesboro had

**440**

failed to timely secure favorable determination of a proposal to change an election standard, the municipal election in which the changes were implemented was unlawful and a new election was required. The parties stipulated that the "provisions of Section 5 of the Voting Rights Act of 1965, 42 U.S.C. Sec. 1973c, apply to the City of Jonesboro, Georgia." 349 F.Supp. at 1055. In *City of Petersburg, Virginia v. United States*, 354 F.Supp. 1021 (D.C.D.C.1972), judgment aff'd, see 410 U.S. 962, 93 S.Ct. 1441, 35 L.Ed.2d 698 (1973), (a declaratory judgment action by the City seeking pre-clearance of a proposed annexation) it was acknowledged that the "City of Petersburg, like all political subdivisions of the Commonwealth of Virginia, is required to clear changes in its voting procedures in accordance with Section 5 of the Voting Rights Act of 1965 as amended, 79 Stat. 439; 42 U.S.C. Sec. 1973c." 354 F.Supp. at 1022.

The above cases are not binding precedent in its strictest sense since the issue here posed was not clearly joined. They do, however, indicate a reasoned judgment by these parties and the courts that the coverage of the Act was to include all the political subdivisions of any designated state.

It is therefore ORDERED, ADJUDGED, and DECREED that the provisions of 42 U.S.C. Sec. 1973 are applicable to Hale County, Alabama, by reason of Alabama having been designated as set out in "Appendix A" to the October 18, 1976, Opinion and Order, and the election procedures for County Commissioners in that county were affected by legislative enactments as set out in that Opinion and Order and referred to in the Judgment entered.