David BERGLAND, et al.,
Plaintiffs-Appellants,

The Citizens Party of Georgia,
Intervenors-Appellants,

Gene K. Robinson,
Intervenor-Appellant,

v.

Joe Frank HARRIS, et al.,
Defendants-Appellees.

No. 84–8701.

United States Court of Appeals,
Eleventh Circuit.

Aug. 12, 1985.

Walker Chandler, Zebulon, Ga., for Libertarian Party.

Jim Coonan, (Secretary, Citizens Party of Ga.) pro se.

Gene K. Robinson, pro se.

H. Jeff Lanier, Atlanta, Ga., for defendants-appellees.

Before RONEY and HILL, Circuit Judges, and PITTMAN *, District Judge.

RONEY, Circuit Judge:

In this ballot access case, plaintiffs claim that certain provisions of the Georgia Election Code violate their constitutional rights to vote, to free speech and political association, and to equal protection of the law. The district court dismissed the complaint for failure to state a claim. Because the record is inadequate to properly apply the constitutional standards announced by the Supreme Court in *Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), we reverse and remand for further proceedings.

On July 2, 1984, in the heat of the 1984 election campaign, this suit was initially filed by a number of political organizations and individuals seeking access to the No-

* Honorable Virgil Pittman, U.S. District Judge for the Southern District of Alabama, sitting by designation.

vember 1984 general election ballot.[1] Plaintiffs challenged the provisions of the Georgia Election Code concerning the distinction between a "political party" and a "political body,"[2] the signature requirements for nominating petitions,[3] and the filing deadline for nomination petitions.[4] The district court dismissed the claims finding that the State's interests in burdening the plaintiffs' rights were legitimate and that the challenged provisions were the least burdensome ways to protect those interests.

[redacted] In *Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), the Supreme Court set forth the proper approach for courts to take in analyzing state statutes restricting ballot access. Rejecting the use of any "litmus-paper test" for separating valid from invalid restrictions, the Court instead endorsed "an analytical process that parallels [a court's] work in ordinary litigation." *Id.* at 789, 103 S.Ct. at 1570. First, a court must evaluate the character and magnitude of the asserted injury to rights protected by the First and Fourteenth Amendments. Second, it must identify the interests advanced by the State as justifications for the burdens imposed by the rules. Third, it must evaluate the legitimacy and strength of each asserted state interest and deter-

1. The original plaintiffs in this action were the Libertarian Party of Georgia; David Bergland, the Libertarian Party's presidential candidate; the Bergland for President Committee; various supporters and electors of the Libertarian Party; Bob Richards, the Populist Party's presidential candidate; various supporters and electors of the Populist Party; and Forrest Williams, a Populist Party candidate for Congress. Defendants were Georgia's governor and secretary of state.

2. The definitional section of the Georgia Election Code provides:

As used in this chapter, the term:

* * * * * *

(19) "Political body" or "body" means any political organization other than a political party.

* * * * * *

(21) "Political party" or "party" means any political organization which at the preceding:

(A) Gubernatorial election nominated a candidate for Governor and whose candidate for Governor at such election polled at least 20 percent of the total vote case in the state for Governor; or

(B) Presidential election nominated a candidate for President of the United States and whose candidates for presidential electors at such election polled at least 20 percent of the total vote cast in the nation for that office.

O.C.G.A. § 21-2-2(19), (21).

3. Candidates for offices voted on statewide, who are unable to qualify as candidates of a "political party" in the manner specified by O.C.G.A. §§ 21-2-150 to -156, may be placed on the ballot if they submit a nomination petition:

(b) A nomination petition of a candidate seeking an office which is voted upon state-wide shall be signed by not less than 2.5 percent of the total number of electors eligible to vote in the last election for the filling of the office the candidate is seeking; a nomination petition of a candidate for any other office shall be signed by not less than 5 percent of the total number of electors eligible to vote in the last election for the filling of the office the candidate is seeking. However, in the case of a candidate seeking an office for which there has never been an election or seeking an office in a newly constituted constituency, the percentage figure shall be computed on the total number of electors in the constituency who would have been qualified to vote for such office had the election been held at the last general election.

O.C.G.A. § 21-2-170(b).

4. (d) Each candidate required to file a notice of candidacy by this Code section shall, no earlier than 9:00 A.M. on the fourth Wednesday in May and no later than 12:00 Noon on the second Wednesday in July immediately prior to the election, file with the same official with whom he filed his notice of candidacy, a nomination petition in the form prescribed in Code Section 21-2-170, except that such petition shall not be required if such candidate is:

(1) A nominee of a political party for the office of presidential elector when such party has held a national convention and therein nominated candidates for President and Vice President of the United States;

(2) Seeking office in a special election; or

(3) An incumbent qualifying as a candidate to succeed himself if, prior to the election in which he was originally elected to the office for which he seeks reelection, such incumbent filed a notice of candidacy and a nomination petition as required by this chapter; or

(4) A candidate seeking election to the office of judge of a state court, judge of a superior court, Judge of the Court of Appeals, or Justice of the Supreme Court in a nonpartisan primary.

O.C.G.A. § 21-2-132(d).

mine the extent to which those interests necessitate the burdening of the plaintiffs' rights. Having conducted this weighing of all relevant factors, the reviewing court is then in a position to decide whether the challenged provisions are unconstitutional.

There is an insufficient factual record to carry out the *Anderson* requirements. After defendants filed a motion to dismiss, plaintiffs-intervenors filed a summary judgment motion supported by exhibits. Defendants responded with two affidavits of Frances Duncan, the Director of the Elections Division of the Office of the Secretary of State. One of those affidavits set forth the State's administrative interests justifying the July filing deadline: to allow adequate time to process and verify signatures on the nomination petitions and to provide rejected applicants an opportunity to obtain judicial review. The affidavit further stated that a mid-September ballot printing deadline was necessary to enable the State to send ballots to the counties in time for them to print their ballots and make absentee ballots available 21 days prior to the November general election. In dismissing plaintiffs' complaint, the district court expressly relied on the state interests asserted by Duncan's affidavit.

The plaintiffs contend that the interests asserted by the State to justify the mid-September ballot printing deadline and the two-month petition verification period are inconsistent with the shorter time periods afforded by statute for the State to act in analogous situations. For example, the State is required to print ballots on tighter schedules under O.C.G.A. § 21–2–134(c) (death, disqualification or withdrawal of candidate prior to election) and O.C.G.A. § 21–2–501(b) (run-off elections). The State is required to verify a greater number of signatures in a shorter time period in the event of a recall petition. O.C.G.A. § 21–4–10(a) (providing 30 days to verify signatures of 15% of state's registered voters). There is nothing in the record to explain the discrepancy between those provisions and the ones plaintiffs challenge.

■ Under *Anderson v. Celebrezze*, a court ruling on a challenge to ballot access restrictions must not only determine the legitimacy and strength of the interests claimed by the State to justify its rules, but must also "consider the extent to which those interest make it necessary to burden the plaintiff's rights." 460 U.S. at 789, 103 S.Ct. at 1570. The affidavits filed by the State in this case are simply inadequate to allow a court to conduct such a weighing of interests. The State must introduce evidence to justify both the interests the State asserts and the burdens the State imposes on those seeking ballot access.

Contrary to the State's argument, the two cases which have upheld the Georgia provisions against constitutional attack by prospective candidates and minor political parties do not foreclose the parties' right to present the evidence necessary to undertake the balancing approach outlined in *Anderson v. Celebrezze. Jenness v. Fortson*, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971), and *McCrary v. Poythress*, 638 F.2d 1308 (5th Cir.), *cert. denied*, 454 U.S. 865, 102 S.Ct. 325, 70 L.Ed.2d 165 (1981), both involved candidates for statewide or local office. *McCrary* expressly noted that the analysis of a challenge by a presidential candidate might compel a different result. *McCrary*, 638 F.2d at 1314 n. 5. *Libertarian Party of Florida v. State of Florida*, 710 F.2d 790 (11th Cir.1983), upholding a Florida 3% statewide petition requirement that forced candidates for statewide office to gather signatures of 144,492 registered voters to qualify for the ballot, also involved a state office. The Supreme Court emphasized in *Anderson* that "the State has a less important interest in regulating Presidential elections than statewide or local elections, because the outcome of the former will be largely determined by voters beyond the State's boundaries." 460 U.S. at 795, 103 S.Ct. at 1573. The difference between state and local offices and federal offices, stressed by plaintiffs in this case, requires a different balance than that used in weighing the state interests against the burdens placed on candidates for statewide

and local offices in *Jenness, McCrary*, and *Libertarian Party*.

■ In *Mandel v. Bradley*, 432 U.S. 173, 97 S.Ct. 2238, 53 L.Ed.2d 199 (1977), the Court reviewed a three-judge district court's decision that prior precedents, including summary affirmances by the Supreme Court, rendered unconstitutional *per se* provisions of the Maryland election laws, one of which involved an early filing date. The Supreme Court reversed, instructing the district court to take evidence and apply constitutional standards announced by the Court in earlier cases. *Id.* at 178, 97 S.Ct. at 2241. Similarly, upon remand of this case the district court should "sift through the conflicting evidence and make findings of fact as to the difficulty of obtaining signatures in time to meet the early filing deadline." *Id.* The court should consider the extent to which the burden is increased in this case by the combination of a relatively early filing deadline and a relatively high signature requirement. *Storer v. Brown*, 415 U.S. 724, 742–43, 94 S.Ct. 1274, 1285, 39 L.Ed.2d 714 (1974) (acknowledging that 24-day limitation on signature gathering did not invalidate statutory scheme standing alone, but recognizing that combining it with other provisions of the election law might do so); *see also Mandel v. Bradley*, 432 U.S. at 177 n. 2, 97 S.Ct. at 2241 n. 2.

The district court should then weigh the precise interests advanced by the State as justifications for the burdens imposed by its rules. *Anderson*, 460 U.S. at 789, 103 S.Ct. at 1570. In doing so, the court may analyze the past experience of minor party and independent candidates in Georgia as an indication of the burden imposed on those who seek ballot access. *Mandel*, 432 U.S. at 178, 97 S.Ct. at 2241.

■ The impending election forced the court to expedite its hearing and consideration of this case.[5] The expedition of this case to meet the needs of the parties illustrates the commendable way in which the federal courts respond to the requirements of a given case. The fact that many parties are pro se increases the difficulty in handling a case expeditiously. The Supreme Court has noted, however, that handling a ballot access case in expedited fashion, while necessary, may result in a district court's failure to apply the proper constitutional standards. *Mandel*, 432 U.S. at 178, 97 S.Ct. at 2241. With the time now to develop the factual record necessary to follow the weighing process dictated by *Anderson v. Celebrezze*, we vacate the judgment and remand the case to the district court for further proceedings which can be conducted and presented for review, if the parties so desire, without the time limitations of an impending election.

■ We note that defendants now question whether plaintiffs have standing to maintain this action. They point out that Georgia law required a candidate for statewide office to submit 61,670 signatures to qualify to be placed on the ballot. They argue the plaintiffs only made token attempts to meet this requirement: the Libertarian Party collected 8,488 signatures, the Independent Party collected 258 signatures, Williams collected 15 signatures, Robinson collected 1723 signatures for Lowery, and the Citizens Party and Garland did not file any petition at all. Noting that the candidates declared their candidacy well in advance of the filing deadline, the State argues that any "injury" was caused by the candidates' own inaction, and not by Georgia law. We are satisfied, however, that plaintiffs have demonstrated "some

---

5. The suit was filed July 2, 1984, seeking access to the November general election ballots. On July 13, 1984, the defendants filed a motion to dismiss. On August 6, 1984, the district court allowed additional groups and individuals to intervene as plaintiffs: the Citizens Party of Georgia; various supporters of the Citizens Party; and Gene K. Robinson, an independent voter and supporter of independent candidates Ar-

thur James Lowery for President and Raymond L. Garland for Vice President. The original plaintiffs and the Citizens Party intervenors moved for summary judgment, and the court scheduled a hearing for August 10, 1984 to consider all motions. On August 14, 1984, the district court entered an order dismissing plaintiffs' complaints for failure to state a claim.

actual or threatened injury" as a result of the allegedly unconstitutional ballot access restrictions and that a favorable decision would alleviate that injury. *Valley Forge College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). The fact that plaintiffs were unable to comply with election law provisions restricting ballot access does not deny them standing to challenge the constitutionality of those laws.

VACATED and REMANDED.