**The LIBERTARIAN PARTY OF GEORGIA; David Bergland; the Bergland for President Committee; Clarence Duncan; Gary Marcus; the Libertarian Party; Jim Yarbrough; Harold Raymond Garner, Jr.; Forest Williams; Perry Willis; and Bob Richards, Plaintiffs,**

**The Citizens Party of Georgia: Ceci Mitchell; Bernard Cox; James Tucker; Jim Coonan; and Sandy Michaels, Intervenor-Plaintiffs,**

**Gene K. Robinson, Intervenor-Plaintiff,**

**v.**

**Joe Frank HARRIS, Governor, State of Georgia, and Max Cleland, Secretary of State, State of Georgia, Defendants.**

**Civ. A. No. C84–1311A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 15, 1986.

Libertarian Party of Georgia, et al., pro se.

H. Jeff Lanier, Asst. Atty. Gen., Atlanta, Ga., for Harris & Cleland.

## ORDER

ROBERT H. HALL, District Judge.

Currently before this court is plaintiff Citizens Party of Georgia ("Citizens Party") motion for preliminary injunction requesting that this court order that the names of candidates nominated by plaintiff Citizens Party for election to statewide offices in the 1986 general election, and submitted to the office of the Secretary of State on or before the first day of October, 1986, be placed on the general election ballot. For the reasons set forth herein, the court DENIES plaintiff's motion.

## FACTS

The Libertarian Party, *et al.,* filed the instant action July 2, 1984, and plaintiff Citizens Party and others have intervened.

Plaintiffs and intervenors sought declaratory and injunctive relief from the operation of several provisions of the Georgia Elections Code claiming these provisions unconstitutionally restricted ballot access for independent candidates and candidates for minor political parties. Defendants moved to dismiss the complaint. Following a hearing on defendants' motion, this court dismissed the action. *Libertarian Party of Georgia, et al. v. Harris,* No. C84–1311A (N.D.Ga. September 24, 1984). Plaintiffs and intervenors appealed this court's order to the Eleventh Circuit Court of Appeals which remanded the matter to this court for further proceedings to develop the factual record. *Bergland v. Harris,* 767 F.2d 1551 (11th Cir.1985).

Following the Eleventh Circuit's remand, plaintiff Citizens Party amended its complaint which as amended challenges only certain provisions of the Georgia Elections Code which relate to ballot access for candidates for the office of President of the United States and Presidential Elector. Upon motion, this court issued an order staying the action pending the outcome of the General Assembly's efforts during the 1986 session to change the Georgia Elections Code, because the court felt the relevant issues might be mooted by legislative enactments. The General Assembly passed a bill, Act 1517 (effective date April 3, 1986), which rewrote several ballot access provisions.

By the function of Section 5 of the Voting Rights Act of 1965, changes in ballot access requirements in the State of Georgia must be precleared by the United States Department of Justice. 42 U.S.C. 1973c (1981). On May 1, 1986, this court stayed the action pending preclearance. Preclearance was given by the Justice Department on June 9, 1986. Defendants notified plaintiffs and intervenors at the preclearance on June 12, 1986.

## DISCUSSION

A. *Statutory Requirements for Ballot Access*

The Georgia Elections Code, codified at Title 21 of the Georgia Official Code Anno-

tated, provides several fundamental requirements for candidates, political parties, and political bodies to have access to the ballot.[1] Georgia's fundamental ballot access scheme as amended by Act 1517, provides that candidates may qualify for an election by being nominated by party convention.[2] Ga. Off'l Code Ann. § 21–2–130 (Cum.Supp.1986).

The convention requirement, which predated the enactment of Act 1517, was originally enacted in 1970 and reenacted by a 1983 amendment. Further, with respect to the convention requirement, the Code provides that candidates nominated for statewide public office in a convention must file notice of their candidacy no later than 12:00 Noon fourteen days after the fourth Wednesday in May. Ga. Off'l Code Ann. § 21–2–132 (Cum.Supp.1986) (effective date, July 1, 1983).[3] The nominee of such a convention having filed a notice of candidacy, may have his name printed on the ballot at the general election by filing a nominating petition. *Id.* A nominating petition of a candidate seeking statewide office must be signed by one percent of the registered voters eligible to vote in the last election for the filling of the office the candidate is seeking. Ga. Off'l Code Ann. § 21–2–170(b) (Cum.Supp.1986). No nominating petition may be circulated prior to 180 days before the last day on which the petition may be filed. Ga. Off'l Code Ann. § 21–2–

170(e). The nominating petition must be filed by the first Tuesday in August. Ga. Off'l Code Ann. § 21–2–185 (Cum.Supp. 1986). There is also a fee requirement. Ga. Off'l Code § 21–2–131 (Cum.Supp. 1986).

The changes enacted by Act 1517 became effective April 3, 1986. The effects of the provisions of Act 1517 were to change the deadline for the filing of a nomination petition from the second Wednesday in July to the first Tuesday in August and to reduce the number of signatures required on a nominating petition for a candidate seeking statewide office from 2.5% to 1% of the total number of voters eligible to vote in the last election for the filling of the office which the candidate is seeking. Act 1517 also establishes a method by which a political body may qualify to have its candidates for statewide office placed on the ballot without the necessity of filing individual nomination petitions. To do so, political bodies must either file a petition with the Secretary of State signed by voters equal to 1% of the registered voters who were registered and eligible to vote in the preceding general election or have nominated a candidate for statewide office in the previous general election who received a number of votes equal to 1% of the total number of registered voters who are registered and eligible to vote in such general election.

---

**1.** Plaintiff Citizens Party is a "political body" for under Ga. Off'l Code § 21–2–2(19).

**2.** This section provides that candidates

May qualify for an election by virtue of ... (3) nomination for a state-wide office by a duly constituted political body convention as prescribed in Code Section 21–2–172 if the political body making the nomination has qualified to nominate candidates for statewide public office under the provisions of Code Section 21–2–180.

The state in this action contends it has a compelling interest in verifying the validity of a candidate's claim that he is a nominee of a political body. This interest derives from the state's interest in avoiding confusion, deception, and frustration of the democratic process which is best served by eliminating totally frivolous candidates from the ballot and placing on the ballot only those candidates who have demon-

strated some preliminary showing of a significant medium of support. Jeness v. Fortson, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971).

**3.** *See* Off'l Code Ann. § 21–2–187 (1986); which provides:

Political bodies shall hold their conventions in accordance with Code Section 21–2–172 and candidates nominated for state-wide public office in convention shall file a notice of candidacy no earlier than 9:00 a.m. on the fourth Wednesday in May and no later than 12:00 noon on the fourteenth day following the fourth Wednesday in May as prescribed in Code Section 21–2–132; provided, however, that the political body must file its qualifying petition no later than the first Tuesday in August following the convention as prescribed in Code Section 21–2–185 in order to qualify its candidates to be listed on the general election ballot.

## B. *Likelihood of Success on the Merits*

Under the four part preliminary injunction test, plaintiff must demonstrate a likelihood of success on the merits of its claim.[4] The court finds plaintiff has failed to do so. At the hearing on the current motion, plaintiff stated that it does not dispute that the Georgia Elections Code, as amended by Act 1517, is constitutional. Plaintiff claims only that Act 1517 by virtue of its "late" preclearance by the Justice Department on June 12, 1986, is not binding on the 1986 general election. Plaintiff contends it has been denied the opportunity to participate in the 1986 general election for statewide offices by the lack of an enforceable and constitutional statute providing means of ballot access. Further, plaintiff claims that by the operation of the preclearance procedure, plaintiff was precluded from fielding a slate of candidates in the 1986 general election. Therefore, plaintiff requests that this court, by its order, place any candidates plaintiff chooses to name as nominees of its party on the November 1986 ballot. Plaintiff requests the court to do so without requiring it to comply with *any* of the requirements of the Georgia Elections Code whether pre-Act 1517 requirements or requirements amended by the act, and regardless of whether the requirements are disputed as a part of this action or not.

Specifically, plaintiff contends that, "the newly enacted Ga. Off'l Code Ann. § 21-2-187 requires that candidates nominated by Convention for such offices shall file notice of candidacy 'no later than 12:00 noon on the fourteenth day following the fourth Wednesday in May', which deadline had expired prior to receipt of preclearance from the United States Department of Justice."[5] (Plaintiff's Brief in Support at 8). However, at hearing, plaintiff admitted that the preclearance procedure did not preclude plaintiff from holding a convention. Indeed, plaintiff has never claimed that the convention requirement was unconstitutional. Plaintiff admitted that it made no attempt to hold a nominating convention for the purpose of complying with the convention requirement of § 21-2-130. Thus, even though plaintiff held no convention to choose its nominees, plaintiff claims it was denied ballot access by the fact that it was notified of the resolution of the preclearance procedure one day after the deadline for filing notice of candidacy. The court finds no merit in this argument.

The notice of candidacy provision was not altered by Act 1517 and thus was not subject to the July 9, 1986, preclearance determination. Indeed, the notice of candidacy provision, Ga. Off'l Code Ann. § 21-2-132, became effective on July 1, 1985, almost a full year before. Plaintiff has not challenged the constitutionality of this section. Plaintiff failed to comply with a valid law and cannot now claim that preclearance of Act 1517 precluded compliance with the notice of candidacy provisions enacted a year before. Thus, the court finds plaintiff has no likelihood of success on the merits of its claim.

Charitably read, plaintiff's brief states another, more amorphous, ground for relief. Because of the state of flux and uncertainty in the Georgia ballot access laws due to the defendant Governor Harris' April 3, 1986 signing of Act 1517, and the preclearance procedure that according to plaintiff called into question that bill's validity until June 12, 1986, plaintiff was unable to recruit a slate of candidates for the general election. Specifically, plaintiff contended at hearing that it could not recruit a slate of candidates prior to the notice of candidacy deadline because it could not definitely inform potential candidates whether the signature requirement for the nominat-

---

**4.** Because this court finds that plaintiff does not meet this prong of the test, the court feels discussion of the other prongs is unnecessary.

**5.** The fourth Wednesday in May 1986 occurred on May 28, 1986. Fourteen days after that date was June 11, 1986. Preclearance became effective on June 9, 1986, but plaintiffs were not notified until June 12, 1986. Therefore, plaintiff's claim must be read to contend it was unable to field any candidates for statewide office because it missed the notice of candidacy deadline by one day.

ing petition was to be 2.5% or 1% of the relevant eligible voters.[6] Plaintiff claims that expecting it to begin a signature drive with the possibility that Act 1517 might not be precleared and therefore the possibility that the Citizens Party would have to obtain 2.5% of the eligible voters' signatures instead of 1%, "demands politically absurd behavior by movants," and is unconstitutionally burdensome (Plaintiff's Reply Brief at 1). Even accepting the highly questionable notion that this contingency precluded plaintiff from fielding any candidates, the politically absurd behavior demanded of plaintiff is merely good faith compliance with a valid law. Only plaintiff's inaction as an organization precluded its access to the ballot.

In support of this argument, plaintiff calls the court's attention to the case of *Citizens Party of Georgia, et al. v. Poythress*, which involved the efforts of Danny Feig to obtain ballot access to seek the office of State Senator from District 36. That case involved the timing of the legislative redistricting of the District 36 boundaries and final preclearance by the Attorney General as redrawn. *Citizens Party of Georgia v. Poythress*, 683 F.2d 418 (11th Circuit, 1982). There, due to preclearance of a redistricting scheme, the Citizens Party was unable to ascertain the correct territorial boundaries of the area where they were required to collect signatures for the nominating petition requirement. Because of delayed preclearance, 130 of the allowable 180 days to obtain signatures had elapsed. This court extended the deadline to obtain those signatures by 30 days.[7] *Citizens Party of Georgia et al. v. Poythress*, No. C82–1260A (N.D.Ga. July 26, 1982) (Hall, J.).

That situation is very different than the case at bar. Here, there was no uncertainty as to the several requirements for ballot access. However, plaintiff chose to take no action to field a slate of candidates other than moving for the requested injunction. The convention requirement and the notice of candidacy requirement were not in doubt, *see* discussion *supra*. Therefore, the court finds no merit in plaintiff's argument.

It is likely that plaintiff has read the Eleventh Circuit's opinion remanding this action to this court for further proceedings as a statement that the pre-Act 1517 election requirements were unconstitutional. However, this conclusion is untenable. A closer examination of the Circuit court's opinion reveals that the case was remanded for additional factual development and the explicit balancing process dictated by *Anderson v. Celebreeze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). In any case, plaintiff has not challenged the constitutionality of the convention requirement or the notice of candidacy provision. Therefore, the constitutionality of the Pre-Act 1517 Elections Code is not at issue.

Plaintiff has not justifiable excuse for its failure to comply with any of the Election Code provisions. In *U.S. v. County Commission, Hale County, Alabama*, 425 F.Supp. 433 (S.D.Ala.1976) (three judge court), aff'd mem., 430 U.S. 924, 97 S.Ct. 1540, 51 L.Ed.2d 768 (1977), the court preferred to permit even the operation of challenged election laws pending preclearance. There, if federal approval could not be obtained, the court indicated it would enjoin the proceedings at that time, or order a new election. In the instant action, where plaintiff contends preclearance was "late", plaintiff should have complied with the unchallenged election code requirements of holding a convention and filing notice of

---

**6.** Apparently the actual difference in numbers is approximately 60,000 signatures under the old (2.5%) requirement compared to approximately 25,000 signatures under the Act 1517 (1%) amendments.

**7.** Note that the court did not automatically order plaintiff in that case to be placed on the ballot. Having fulfilled all other code requirements, plaintiff was allowed an additional time in which to comply with the petition requirement because, in essence, plaintiff had not known which streets or houses to canvass.

candidacy. If Act 1517 was precleared under the section 5 procedure, plaintiff could have then proceeded to comply with its additional requirements.[8] If the Justice Department had denied preclearance, plaintiff may have come into equity for relief from the challenged provisions of the pre-Act 1517 election code.[9]

Plaintiff, however, has done nothing to comply with any provision of the Elections Code. Plaintiff admits it presently has no potential nominees for any statewide office and predicts it could recruit only two candidates before October 1, 1986. Nevertheless, plaintiff demands that it be allowed to present the names of its candidates to the Secretary of State on October 1, 1986 without: (1) holding a convention to establish the candidates' validity as nominees of the Citizens Party, (2) filing a notice of candidacy to allow the State time to verify the qualifications of such candidates and hold to hearings should the State find the candidates not to qualify, (3) filing a fee, and (4) complying with even the 1% signature requirement for the nominating petition in order to demonstrate a modicum of public support.

Because plaintiff's likelihood of success on the merits of its claim is nil, this court DENIES plaintiff's motion for preliminary injunction.

Additionally, plaintiff's amended complaint states a claim challenging only the pre-Act 1517 operation of the Georgia Elections Code. At the hearing on its motion for preliminary injunction, plaintiff admitted that it does not dispute the constitutionality of the Georgia Election Code as amended by Act 1517. Therefore, the court DISMISSES as moot plaintiff-intervenor Citizens Party's amended complaint against defendants with prejudice.

8. Had it complied with the convention and notice of candidacy requirements, plaintiff might have requested an extension of time to enable it to comply with any Act 1517 changes.

9. This scenario would have left the old scheme of requiring 2.5% signatures and amid-July filing deadline as the applicable election require-

ments. For injunction purposes, it is doubtful that a request for injunctive relief from these provisions based on their unconstitutionality would have met the "likelihood of success on the merits" prong of the test for preliminary injunction. *Anderson v. Celebreeze, supra.*