[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-11816
Non-Argument Calendar

_____

D.C. Docket No. 1:12-cv-01822-RWS

GREEN PARTY OF GEORGIA,
CONSTITUTION PARTY OF GEORGIA,

Plaintiffs-Appellants,

versus

STATE OF GEORGIA,
SECRETARY, STATE OF GEORGIA,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(January 6, 2014)

Before TJOFLAT, JORDAN, and COX, Circuit Judges.

PER CURIAM:

The Green Party of Georgia and the Constitution Party of Georgia (the "Plaintiffs") challenge in this appeal the district court's order dismissing their complaint for failure to state a claim upon which relief may be granted.[1]  Because the district court erred by concluding that this case was indistinguishable from controlling decisions we reverse the district court's order and remand for further proceedings.

## I. Procedural History

The Plaintiffs filed this suit claiming that Georgia's petition-signature requirement for ballot access violates the First and Fourteenth Amendments of the United States Constitution.  To be listed on the ballot in Georgia, any presidential candidates not affiliated with a political party recognized by Georgia must present a petition with signatures from 1% of the total number of registered voters in Georgia.[2]  The Georgia Secretary of State and the State of Georgia moved to

---

[1] The State of Georgia contended in its motion to dismiss that it was immune from suit under the Eleventh Amendment.  (R. 4-1 at 14-15.)  The Plaintiffs did not contest the State of Georgia's immunity in response.  (R. 5.)  The district court dismissed the action for failure to state a claim without considering the State of Georgia's immunity.  (R. 10.)  The Plaintiffs do not dispute the State of Georgia's immunity on appeal.  (Appellant's Br. at 3.)  Because the State of Georgia is immune from this suit under the Eleventh Amendment, we instruct the district court to dismiss the State of Georgia from this action for want of jurisdiction on remand.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 908 (1984).

[2] Georgia classifies political organizations as either a "political body" or a "political party."  To be a political party, the organization must have received at least 20% of the total vote in an election for governor or president.  OCGA §§ 21-2-2(23)–(25).  While political parties receive automatic ballot access, a political body must file a nomination petition signed by either 1% of the total number of registered voters for a statewide office (including the presidential

2

dismiss this case contending that past decisions of the United States Supreme Court and the United States Court of Appeals for the Eleventh Circuit have conclusively resolved the issue.  The Defendants referenced a number of cases where a 5% petition-signature requirement for non-statewide ballot access was upheld and reasoned that if a 5% requirement was constitutional, the lower 1% requirement must also be constitutional.  *See, e.g.*, *Jeness v. Fortson*, 403 U.S. 431, 91 S. Ct. 1970 (1971); *Coffield v. Kemp*, 599 F.3d 1276 (11th Cir. 2010); *Cartwright v. Barnes*, 304 F.3d 1138 (11th Cir. 2002).  Though none of the cases Georgia referenced considered ballot access for a presidential election, the district court agreed with Georgia Defendants reasoning and dismissed the action for failure to state a claim.  The Plaintiffs appeal.

## II. Discussion

We review de novo a motion to dismiss for failure to state a claim.  *Timpson v. Sampson*, 518 F.3d 870, 872 (11th Cir. 2008).

The Plaintiffs contend that the district court erred by concluding that this case is indistinguishable from previous decisions upholding Georgia's 5% petition-signature requirement for non-statewide elections.  As the Plaintiffs note, we previously addressed whether our past decisions upholding a 5% petition-signature

---

election) or 5% of the total number of registered and eligible voters for any other office.  OCGA § 21-2-170.

requirement preclude a challenge to a lower petition-signature requirement for a presidential candidate and we concluded that our past decisions are distinguishable. *See Bergland v. Harris*, 767 F.2d 1551 (11th Cir. 1985).

To determine whether a ballot access law violates the First and Fourteenth Amendments, we follow the approach laid out in *Anderson v. Celebrezze*, 460 U.S. 780, 103 S. Ct. 1564 (1983). *Bergland*, 767 F.2d at 1553. In *Anderson*, the Court rejected "the use of any 'litmus-paper test' for separating valid from invalid restrictions." *Id.* (citing *Anderson*, 460 U.S. at 789, 103 S. Ct. at 1570). Rather, a court must first "evaluate the character and magnitude of the asserted injury to rights protected by the First and Fourteenth Amendments. Second, it must identify the interests advanced by the State as justifications for the burdens imposed by the rules. Third, it must evaluate the legitimacy and strength of each asserted state interest and determine the extent to which those interests necessitate the burdening of the plaintiffs' rights." *Bergland*, 767 F.2d at 1553-54.

In *Bergland*, the district court dismissed an action challenging Georgia's then 2.5% petition signature requirement for a presidential candidate. The district court based its dismissal on our past decisions that upheld a 5% petition signature requirement for other offices. We rejected this "litmus-paper test" approach and held that our past decisions "do not foreclose the parties' right to present the evidence necessary to undertake the balancing approach outlined in *Anderson*." *Id.*

4

at 1554.  Furthermore, a state's interest in regulating a presidential election is less important than its interest in regulating other elections because the outcome of a presidential election "will be largely determined by voters beyond the State's boundaries" and "the pervasive national interest in the selection of candidates for national office . . . is greater than any interest of an individual State."  *Anderson v. Celebrezze*, 460 U.S. 780, 795, 103 S. Ct. 1564, 1573 (1983).  Consequently, a ballot access restriction for presidential elections "requires a different balance" than a restriction for state elections.  *Bergland*, 767 F.2d at 1554; *see also McCrary v. Poythress*, 638 F.2d 1308, 1314 n.5 (5th Cir. 1981) (holding that the constitutionally of Georgia's ballot access law may be different as applied to a presidential election).

The same analysis we applied in *Bergland* also applies to this case.  The district court's approach employs the type of "litmus-paper test" the Supreme Court rejected in *Anderson*.  *See Anderson*, 460 U.S. at 789, 103 S. Ct. at 1570.  And, the district court failed to apply the *Anderson* balancing approach.

### III. Conclusion

Accordingly, we conclude that this case is distinguishable from our past decisions and that the district court erred by dismissing the action against the Defendants for failure to state a claim.  We reverse the judgment of the district court and remand for further proceedings consistent with this opinion.  On remand,

the district court should dismiss the action against the State of Georgia for want of jurisdiction because it is immune from suit under the Eleventh Amendment.

REVERSED AND REMANDED WITH INSTRUCTION.