**LIBERTARIAN PARTY OF NEVADA; James Burns, State Director of the Libertarian Party of Nevada; and Dan Becan, State Chairman of the Libertarian Party of Nevada, Plaintiffs,**

v.

**William D. SWACKHAMER, Secretary of State of the State of Nevada, Brian McKay, Attorney General of the State of Nevada, Richard Bryan, Governor of the State of Nevada, and State of Nevada, Defendants.**

No. CV R–86–197 BRT.

United States District Court,
D. Nevada.

May 27, 1986.

Randall K. Edwards, American Civil Liberties Union, Carson City, Nev., for plaintiffs.

Jennifer Stern, Deputy Atty. Gen., Carson City, Nev., for defendants.

## JUDGMENT

BRUCE R. THOMPSON, District Judge.

Plaintiffs seek access for the Libertarian Party of Nevada (Party) to the 1986 electoral ballot. The electoral laws at issue are found at NRS 293.128 and 293.1276–1279. Prior to 1985, NRS 293.128 and NRS 293.-073 stood as the only hurdles to third party ballot access. NRS 293.128 then read:

> To qualify as a political party any organization shall, under a common name or designation, file a petition with the secretary of state not less than 60 days before any primary election signed by a number of registered voters equal to or more than 5 percent of the entire number of votes cast at the last preceding general election for Representative in Congress, declaring that they represent a political party or principle the name of which is stated in the petition, and that they desire to participate and nominate candidates in the primary election. The names of the voters need not all be on one petition, but each petition must be verified by at least one of its signers to the effect that the signers are registered voters of the state according to his best information and belief.

NRS 293.073 then and now provides: "Political party" means any organization of registered voters which, under a common name or designation at the last preceding general election, polled for any of its candidates a number of votes equal to or more than 5 percent of the total vote cast for Representative in Congress.

In 1976, the Party gained ballot access under NRS 293.128. Until the 1984 elections, the Party remained a viable one under NRS 293.073. The Party failed to satisfy NRS 293.073 in the 1984 elections. In November of that year the Secretary of State notified Daniel Becan, the Party's chairman, that in order for the Party to qualify for a slate on the 1986 ballot, the requirements of NRS 293.128 would have to be satisfied.

Mr. Becan and several associates commenced their petition-signature drive in early 1985. The petitions apparently contained the declaration required by NRS 293.128, but with superfluous language. In August of 1985, at direction of the Party's director, the 1985 petitions were discarded in favor of new petition forms without the superfluous language. The petitions now read:

We, the undersigned, represent the party of Libertarian principle, the Libertarian Party, and desire to participate and nominate candidates in primary elections.

The drive for signatures continued until late March of 1986, at which time plaintiffs learned the petitions were due in April, 1986. On March 20, 1986, plaintiffs' attorney met with the Secretary of State, who confirmed that the petitions were due by April 1, 1986. After some discussion, the Secretary agreed to a June 4, 1986 filing date.

Since that time, the signature drive has continued, although in an admittedly haphazard fashion. Currently, four volunteers are seeking signatures in Clark County; two are doing the same in Washoe County. To date, the plaintiffs have acquired approximately 5,000 petition signatures, far short of the 13,531 needed pursuant to NRS 293.128 (5% figure).

In mid–1985, the Nevada Legislature approved a measure which created a system for verifying the petition signatures for voter registration. NRS 293.1276–1279. To accommodate the new verification process, the Legislature amended NRS 293.128 to read:

> To qualify as a political party any organization must, under a common name or designation, file a petition with the secretary of state not less than 90 days before any primary election signed by a number of registered voters equal to or more than 5 percent of the entire number of votes cast at the last preceding general election for Representative in Congress, declaring that they represent a political party or principle the name of which is stated in the petition, and that they desire to participate and nominate candidates in the primary election. The names of the voters need not all be on one petition, but each petition must be verified by at least one of its signers to the effect that the signers are registered voters of the state according to his best information and belief. The documents which are circulated for signature must then be submitted for verification pursuant to sections 2 to 5, inclusive, of this act.

Plaintiffs complain that the provisions for verification are vague and ambiguous. They claim their first and fourteenth amendment rights are violated by the combined operation of NRS 293.128 and 293.-1276–1279.

■ We dispose first of defendants' arguments against the justiciability of this controversy. Plaintiffs' federal constitutional rights are claimed to be violated. Actual injury exists because their ongoing ballot access efforts are thwarted by the enforcement of state law. Furthermore, their rights are immediately threatened by the inevitable operation of allegedly violative procedures which are inseparable here in their impact from those legal requirements which are currently impeding plaintiffs' efforts to achieve party status on the ballot. A favorable decision would alleviate these actual and threatened injuries. Plaintiffs therefore have standing. *See Bergland v. Harris*, 767 F.2d 1551, 1555–56 (11th Cir.1985). For like reasons, the case is ripe for immediate review and abstention is not warranted. Cf. *Storer v. Brown*, 415 U.S. 724, 737 n. 8, 94 S.Ct. 1274, 1282 n. 8, 39 L.Ed.2d 714 (1973); *Williams v. Rhodes*, 393 U.S. 23, 28, 89 S.Ct. 5, 9, 21 L.Ed.2d 24 (1968).

■ The focal issue is one of minority party access to the ballot. Although the Party and its representatives are nominally the plaintiffs, the access they seek to achieve affects voters too. The right of persons to associate for the advancement of political beliefs goes hand-in-hand with voters' right to cast their votes effectively. *Anderson v. Celebrezze*, 460 U.S. 780, 786–87, 103 S.Ct. 1564, 1568–69, 75 L.Ed.2d 547 (1982); *Williams v. Rhodes*, 393 U.S. at 30–31, 89 S.Ct. at 10–11. Both rights are inpacted adversely when the state places restrictions on access to the ballot. *Id.* A political party's success before the electorate cannot be measured in vote-getting ability alone; third parties can also be an important outlet for the free-flow of ideas in the democratic process.

In our political life, third parties are often important channels through which political dissent is aired: "All political ideas cannot and should not be channeled into the programs of our two major parties. History has amply proved the virtue of political activity by minority, dissident groups, which innumerable times have been in the vanguard of democratic thought and whose programs were ultimately accepted.... The absence of such voices would be a symptom of grave illness in our society." *Sweezy v. New Hampshire*, 354 U.S. 234, 250–51, 77 S.Ct. 1203, 1212, 1 L.Ed.2d 1311 (opinion of Warren, C.J.).

*Williams v. Rhodes*, 393 U.S. at 39, 89 S.Ct. at 14 (opinion of Douglas, J.).

This is not to say the state is prohibited from regulating ballot access. The state has recognized interests in regulating elections "if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Storer v. Brown*, 415 U.S. at 730, 94 S.Ct. at 1279. Because of the state's interests here, the Court must tread carefully in evaluating whether the challenged statutes pass constitutional muster. Recognizing that there is "no substitute for the hard judgments that must be made" in this area, *id.*, the Court must:

first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

(Citations omitted). *Anderson v. Celebrezze*, 460 U.S. at 789, 103 S.Ct. at 1570.

We think the plaintiffs have demonstrated a significant infringement upon their rights. The rights of voters to associate and vote are "among our most precious freedoms." *Williams v. Rhodes*, 393 U.S. at 30, 89 S.Ct. at 10. The challenged laws have combined here to significantly impede ballot access for the Party in 1986.

Mr. Becan and Mr. James Frye both testified to the inhibiting effect of the declaration of allegiance to Libertarian party or principles upon potential signatories to the petitions. Contrary to defendants' characterization, the required declaration says far more than just a desire to see the Party on the ballot. The signatory voter makes known a commitment to the Party or its principles. While the defendants may be correct in arguing that technically this declaration does not bar the voter from signing other petitions, it is far more reasonable to conclude that the average voter would understand the declaration to imply a promise to register as a Libertarian if party status should be achieved.

The state's interest in requiring the declaration is that of protecting the integrity of the primary ballot, ensuring that the petitioning third party has significant support among the electorate and preventing intra-party raiding. These are compelling state interests. *See Anderson v. Celebrezze*, 460 U.S. at 788–89 n. 9, 103 S.Ct. at 1570 n. 9 and cases cited therein.

There is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot—the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election.

*Jenness v. Fortson*, 403 U.S. 431, 442, 91 S.Ct. 1970, 1976, 29 L.Ed.2d 554 (1970). However, the state may not pursue unnecessarily restrictive means to advance these interests; rather, it must pursue only necessary and least restrictive routes of regulation. *Anderson v. Celebrezze*, 460 U.S. at 789, and at 806, 103 S.Ct. at 1570, and at

1579 (*quoting Kusper v. Pontikes*, 414 U.S. 51, 58–59, 94 S.Ct. 303, 308–09, 38 L.Ed.2d 260 (1973)). This principle is "particularly important where restrictions on access to the ballot are involved." *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 185, 99 S.Ct. 983, 991, 59 L.Ed.2d 230 (1979). Defendants have made no showing that the declaration is either necessary or the least restrictive means. The defendants argue the state is not overreaching because voters are legitimately required to disclose party affiliation when registering to vote. This argument blatantly ignores the limited purpose of the petition: to ensure support for the party's presence on the ballot. Its wording in conflict with the Constitution extends far beyond that. *See Anderson v. Mills*, 664 F.2d 600 (6th Cir.1981); *Libertarian Party of South Dakota v. Kundert*, 579 F.Supp. 735 (D.S.D.1984); *North Carolina Socialist Workers Party v. North Carolina State Board of Elections*, 538 F.Supp. 864 (E.D.N.C.1982).

In addition to declaring party affiliation, the declaration may also require revelation of a commitment to the principles of the third party. This necessarily presumes the third party's principles are distinguishable from those of the major parties. Mr. Becan testified to his party's principles, many of which resemble those espoused by the more conservative ranks of the Republican party. As another witness accurately observed, a conservative Nevada Democrat faced with a similarly worded petition for the Republican party could, in good faith, state his commitment to the grand old party's principles. In short, the interest in party support is not advanced by this portion of the declaration either.

Defendants urge that the Court sever the objectionable petition language requirement, allowing the remainder of the enactment to stand. This would be a useless exercise in light of the other objectionable but unseverable provision, the 90–day filing requirement.

■ NRS 293.128 as amended in 1985 mandates verification pursuant to NRS 293.1276–1279. In and of itself, the procedure cannot be said to injure anyone's first or fourteenth amendment rights. Moreover, the state is undoubtedly justified in requiring that the petition be signed by registered voters in the first place, and in providing a reasonable method by which to verify the signatures for that petition. *See American Party of Texas v. White*, 415 U.S. 767 at 787 n. 18, 94 S.Ct. 1296 at 1309 n. 18, 39 L.Ed.2d 744 (1973); *Storer v. Brown*, 415 U.S. at 743, 94 S.Ct. at 1285.

Again, however, the state's interests must be advanced by necessary and least restrictive means. The 90–day pre-primary filing date for the petitions for third party ballot access does not appear unusual at first glance. Looking deeper, it reveals that the deadline and verification procedure have, as one witness put it, built-in problems. NRS 293.128 provides that the petitioning party "must ... *file a petition* with the secretary of state not less than 90 days before any primary election...." (emphasis added). The parties concede, incorrectly, that this means what it says.

If it does, it creates an inherent bar to third party candidate filing. This year, candidates must file candidacy papers by July 2 in order to be placed on the primary ballot. *See* NRS 293.187; *see also* 293.180. As urged, the 90–day deadline for party petitions is June 4, 1986. Assuming the entire verification procedure is necessary, it would not be completed for 50 days after filing, i.e., on or about July 24, 1986. The Secretary of State cannot accept candidate filings for the primary ballot absent a party designation. 293.187(2). If the petition of the candidate's party has not been verified, the candidate has no party to designate. In this manner, the 90–day filing period as read by the parties creates a real risk of nothing but a blank slate for qualifying third parties, and this effectively precludes ballot access without justification.

Although of no help to the statute, we read the 90–day period differently. NRS 293.128 is inseparably connected with the verification provisions NRS 293.1276–1279. While NRS 293.128 requires filing with the

Secretary of State 90 days before the primary, that filing does not occur within the meaning of the law until the verification procedure is completed and the petition is certified favorably to the petitioning party: "... the petition shall be deemed filed with the secretary of state as of the date on which he receives certificates from the county clerks showing the petition to be signed by the requisite number of voters of the state." NRS 293.1279(4). Thus read, the 90–day period in NRS 293.128 becomes an additional 50 days (maximum length of verification procedure) removed from the primary. The deadline thus imposed by NRS 293.128 is 140 days prior to the primary.

In this way, the conflict between the candidate filing deadline and petition verification process is avoided. Nevertheless, access to the ballot is restricted, especially so in the case of a third party, which ordinarily is not considered by voters as a viable alternative to the two major parties until the eve of election. *See McLain v. Meier*, 637 F.2d 1159, 1164 (8th Cir.1980). Also:

"The characteristic American third party, then, consists of a group of people who have tried to exert influence within one of the major parties, have failed, and later decide to work on the outside. States in which there is an early qualifying date tend to force such groups to create minor parties without first attempting to influence the course taken by a major one. For a dissident group is put to the choice of foregoing major-party primary and other prenomination activity by organizing separately early on in an election year, or losing all opportunity for action as a third party later." Bickel, *supra* n. 11 at 87–88.

*Quoted approvingly in Anderson v. Celebrezze*, 460 U.S. at 805, 103 S.Ct. at 1578. Thus, while it is commendable that no restrictions are placed on time for the circulating of third party petitions, the rights of voters to form alternative parties and to vote effectively are impaired by the remoteness from the elections of the petition filing deadline.

The state, as discussed, is justified in commanding a verification procedure, and a reasonable time for that procedure to be conducted. The 1985 amendment to NRS 293.128 added 30 days to the filing deadline. Testimony reveals the additional 30 days was intended to accommodate the wishes of the county clerks who conduct the verification procedure. No compelling need has been shown for this accommodation, especially in light of the testimony of defendants' witnesses that a total 60–65 days would suffice.

The 90–day filing deadline is part-and-parcel of NRS 293.128. Without it, the provision makes no sense in light of its overall purpose. NRS 293.128 must therefore be held unconstitutional as a whole.

Because of this disposition, we do not express any opinion as to the validity of the requirements of NRS 293.128 that the petition be "signed by a number of registered voters equal to or more than 5 percent of the entire number of votes cast in the last preceding general election for Representative in Congress...."

It is not the purpose of litigation respecting the statutory qualification of a third party for ballot access to completely undermine the state's election processes. Affiliation with a recognized political party carries with it the substantial advantage of enabling a person so affiliated to file a declaration of candidacy for an office in the primary election before the first Wednesday in July (NRS 293.177). Otherwise, an unaffiliated candidate for political office must qualify by petition and file as an independent candidate. Earlier in this opinion we have taken pains to find that the Libertarian Party of Nevada has by virtue of its history as a recognized minority party in Nevada and its good faith efforts under oppressive statutory requirements to qualify for 1986 demonstrated its standing to complain about Nevada statutory restrictions. No other putative third party has done so. This decision will not grant to any party other than the Libertarian Party of Nevada the right to ballot

access for the 1986 elections. No person shall be entitled by virtue of this decision to assert a right to ballot access as a member of some other political party not qualified pursuant to NRS 293.128 other than by compliance with Nevada election laws governing unaffiliated candidates. The foregoing shall constitute the Court's findings of fact and conclusions of law.

Inasmuch as NRS § 293.128 is unconstitutional as applied to the Libertarian Party of Nevada, ·

IT HEREBY IS ORDERED, ADJUDGED AND DECREED that defendants, officials of the State of Nevada, are hereby enjoined from denying ballot access to the Libertarian Party of Nevada and its members during the 1986 elections, such access to be had in compliance with Nevada laws applying to all qualified political parties.