The CHRISTIAN POPULIST PARTY OF ARKANSAS; Ralph P. Forbes, State Chairman and Candidate for United States Senator; the Voters and People of the State of Arkansas; United In a Complaint-Class Action, Plaintiffs,

v.

The SECRETARY OF STATE OF the STATE OF ARKANSAS; the Officers of the Republican Party of Arkansas aka the Radical Reconstructionists and the Republican National Committee and Its Affiliates; Asa Hutchinson, the Republican Nominee for United States Senate; Dale Bumpers, the Democrat Nominee for United States Senate; the Officers of the National Democrat Party and Its Arkansas Agent; the League of Women Voters of Arkansas; KTHV–11 News and Columbia Broadcasting Systems aka CBS; John R. Starr, Editor and Pundit; the Arkansas Democrat, a Daily Newspaper, Defendants.

No. LR–C–86–524.

United States District Court,
E.D. Arkansas, W.D.

Oct. 8, 1986.

Order Jan. 12, 1987.

Ralph P. Forbes, pro se.

John Fincher, Little Rock, Ark., for W.J. (Bill) McCuen.

David S. Mitchell, Little Rock, Ark., for Steve Clark.

Candy Russell, Little Rock, Ark., for Officers of the Republican Party of Arkansas.

Pat Moran, Mitchell, Williams, Little Rock, Ark., for Dale Bumpers.

Kirby Smith, III, Little Rock, Ark., for Democratic Party of Arkansas.

Pansy Clements, Little Rock, Ark., for League of Women Voters of Arkansas.

Glenn W. Jones, Barber, McCaskill, Little Rock, Ark., for KTHV–11 and CBS.

Leon Holmes, Wright, Lindsey & Jennings, Little Rock, Ark., for John R. Starr and the Arkansas Democrat.

## ON MOTION FOR TEMPORARY RESTRAINING ORDER

ROY, District Judge.

Along with their Complaint filed on September 9, 1986, Plaintiffs filed an emergency petition seeking both temporary and permanent injunctive relief, part of which was denied by the Court on that same date. Subsequently, on September 22, Plaintiffs

renewed their request for the injunctive relief not addressed by the Court in its Order of September 9. This motion, Plaintiffs' Motion for Temporary Restraining Order, is the matter presently before the Court, which has been regarded as a request for preliminary injunction in order to provide a full opportunity for all interested parties to be heard. In the Motion, Plaintiffs ask that certain Arkansas election statutes be declared unconstitutional and the Arkansas Secretary of State directed to have the ballots for the November 4th general election reprinted to include the names of the candidates of Plaintiff Christian Populist Party (hereinafter CPP). Plaintiff Ralph P. Forbes has also requested that the Court order Defendant Arkansas Television Company (hereinafter KTHV–11) to provide him with "equal time" on its station due to his exclusion from a debate between Defendant Dale Bumpers and Defendant Asa Hutchinson sponsored by Defendant League of Women Voters of Arkansas which was broadcast "live" by KTHV–11 on September 9, 1986. Mr. Forbes is a write-in candidate for the office of United States Senator from Arkansas, as well as the proclaimed nominee of the CPP for that position, and Defendants Bumpers and Hutchinson are the senatorial nominees of the Democratic and Republican parties, respectively.

Due to the obvious time constraints herein, the Court considers the claim for equal time to also present a request for immediate relief. Upon consent of all concerned parties, this issue was addressed along with the challenge to the Arkansas statutes at a hearing before the Court on October 1, 1986. These two questions will now be discussed by the Court.

## I. PLAINTIFFS' CLAIM FOR INJUNCTIVE RELIEF

In their motion, Plaintiffs claim that Ark. Stat.Ann. § 3–113(*l*) (Supp.1985) and § 3–606 (Supp.1985) are unconstitutional, although at the hearing Plaintiffs limited their challenge to § 3–113. These statutes provide, in pertinent part:

§ 3–113.

(a) Party pledges, if any, and political practices [practice] pledges for primary elections shall be filed, and ballot fees shall be paid during regular office hours in the period beginning at twelve o'clock (12:00) noon on the third Tuesday in March and ending at twelve o'clock (12:00) noon on the fourteenth day thereafter, before the preferential primary election. Party pledges, if any, and political practice pledges shall be filed, and ballot fees for special primary elections shall be paid on or before the deadline established by proclamation of the Governor. Provided, pledges and ballot fees for a new Political Party shall be filed and paid as provided in subsection (*l*) of Section 13 of Article 1 of Act 465 of 1969 [§ 3–113(*l*)], as amended.

(b) * * *

(*l*) Any group of voters desiring to file a petition with the Secretary of State signed by qualified electors equal in number to at least three percent (3%) of the total vote cast for the office of Governor or nominees for Presidential Electors, at the last preceding election, so as to establish a Political Party shall file said petition not later than twelve o'clock (12:00) noon on the first Tuesday in May before the preferential primary election. All petitions must be circulated during the period beginning January 1 and ending the first Tuesday in May of any year.

§ 3–606.

Not less than forty-five (45) days before each election, the Secretary of State shall certify to all County Election Commissioners full lists of all candidates to be voted for in their counties respectively, as the nominations have been certified to him; provided, however, that in special elections held to fill vacancies or to elect officers in case of a tie vote, said certification shall issue at the time specified in the writ of election issued by the appropriate constituted authority.

Plaintiffs contend that § 3–113(*l*) is defective on two grounds—one, that the filing

deadline is too remote in time from the general election, and, two, that the number of signatures required to be obtained on petitions is unreasonably high.

Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest. *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir.1981). Thus, in determining whether Plaintiffs are entitled to the preliminary injunctive relief sought, a finding that the challenged statutes are unconstitutional and inclusion of the names of the CPP's candidates on the general election ballot, the Court must apply the facts of the instant case to each of the considerations enumerated above.

1. Threat of irreparable harm to the movant.

■ The motion challenging the statutes is brought on behalf of Mr. Forbes and the CPP, a heretofore unrecognized and uncertified "political party." From Mr. Forbes' testimony, it is apparent that the CPP is little more than a group consisting of one, sincere, dedicated member (Mr. Forbes) and a handful of unidentified supporters. Mr. Forbes did not name one single person, save himself, who is interested in having the CPP certified as a political party within the State of Arkansas. No petitions or other documents evidencing such interest were presented to the Secretary of State's office or the Court.

Furthermore, it is apparent from Mr. Forbes' testimony that neither he nor the CPP has received any substantial financial support from any source other than himself. The allegation that a number of CPP candidates will be denied access to the ballot unless injunctive relief is granted is without merit, for the evidence reveals that Mr. Forbes is the *only* known candidate who wishes to run as a member of the CPP. Mr. Forbes testified that he person-

ally had "nominated" several other persons to be candidates of the CPP, and had sent congratulatory letters to each so advising them. However, further testimony revealed that all of these persons, except one independent, were actually nominees of either the Democratic or Republican parties. There is no evidence that any of these other candidates have accepted, welcomed or even acknowledged Mr. Forbes' "nomination" of them. On the evidence presented, the Court finds that Mr. Forbes is the only person interested in running as a representative of the CPP.

In view of the Court's findings that the CPP has only a handful of members, if that many, the only party who could conceivably be harmed by operation of the statute in question is Mr. Forbes. As noted previously, Mr. Forbes is a bona fide write-in candidate for the office of United States Senator for Arkansas. Thus, § 3–113(*l*) has not precluded Mr. Forbes from exercising his right to run for public office, nor has it deprived the voters of Arkansas of their right to cast a ballot for him in the November general election. Although write-in status in an election is less advantageous than having one's name printed on the ballot, it is sufficient for the purposes of this motion to convince the Court that Mr. Forbes will not suffer any irreparable harm by the denial of his request for injunctive relief.

2. The state of the balance between the harm to Plaintiffs and the injury that granting the injunction will inflict on other parties litigant.

As noted, the Court does not believe that any plaintiff herein will suffer irreparable harm if injunctive relief is not granted. Conversely, Mr. John Fincher, Director of Election Services for Defendant Secretary of State of the State of Arkansas, testified that it would be virtually impossible to start the ballot preparation process over at this time and have the ballots reprinted and delivered to the appropriate county officials sufficiently in advance of the November 4 election for the names of the local candi-

dates to be added. He also stated that to attempt to do so would "wreck the system" and require the additional expenditure of considerable amounts of time, money and effort. There being no significant harm to any plaintiff, it is clear that the Secretary of State would suffer greater injury if the injunction were granted. A state has a compelling interest in maintaining the stability of its electoral system. *McCarthy v. Austin*, 423 F.Supp. 990 (E.D.Mich.1976) (three judge court).

> 3. The probability that movant will succeed on the merits.

Again, the Court is of the opinion that the CPP is not an identifiable group of persons and that the only real Plaintiff or movant in this matter is Mr. Forbes. Although this part of the *Dataphase* analysis usually requires some review and discussion of the merits of the allegations of a complaint, the Court does not find it necessary to address the merits of Mr. Forbes' contentions here. The Court has very serious doubts about Mr. Forbes' entitlement to the equitable relief sought. The Secretary of State contends that Mr. Forbes' claim for injunctive relief is barred by the equitable defense of laches due to his failure to do anything to have the CPP certified prior to August 25, 1986. It is clear from Plaintiffs' Exhibit 8, a February 27, 1986 letter from Mr. Forbes to the Secretary of State, that Mr. Forbes was aware of the statutory requirements for certification of a new political party well in advance of the deadline provided in Ark.Stat.Ann. § 3–113(*l*). Mr. Forbes testified that during the early part of 1986 he spent a brief period of time gathering signatures on a petition for the certification of his new party, the CPP, but that the number of signatures collected was "less than a hundred."[1] He further testified that he realized that it would take "approximately 1,000 man hours" to collect the number of signatures required by the statute (from the evidence, 26,597) and that it was not

possible for it to be done since he was the only person who either could or would work at collecting signatures. Mr. Forbes then decided to run for the Republican nomination for Lieutenant Governor, a race in which he ultimately finished second in a field of two.

The Court agrees with the Secretary of State that Mr. Forbes' delay until September 9, 1986 to file his complaint and initial request for preliminary relief was unreasonable and without justification. Further, in the Court's Order of September 9, Mr. Forbes was advised that he could renew his request for a hearing (on the issues presently before the Court) after presenting proof of proper service upon all defendants. After the Court's ruling, the file reflects that service was later effected on that date, but Mr. Forbes waited until September 19 to ask the Court for a hearing on these matters. He has clearly slept on his rights. It has been held that one must expeditiously pursue claims against a state's election laws, *Kay v. Austin*, 621 F.2d 809 (6th Cir.1980), or else his entitlement to injunctive or other equitable relief may be lost. *See Williams v. Rhodes*, 393 U.S. 23, 35, 89 S.Ct. 5, 12, 21 L.Ed.2d 24 (1968); *Kay v. Austin*, supra at 813.

The Court also questions the standing of Mr. Forbes and the CPP to challenge the statutes in question, for Mr. Forbes' testimony reveals that he took only minimal action in attempting to have the CPP certified as a new party. The evidence is clear that neither Mr. Forbes nor any other person acting on behalf of the CPP made any realistic accomplishments to indicate even partial compliance with § 3–113(*l*). While it is clear that one who has attempted to obtain ballot access by following established statutory procedure but has been denied such access has standing to challenge that statute, *Kay v. Austin*, supra at 812, one who fails to make a good faith effort to comply may very well lack sufficient standing. *See Libertarian Party of*

---

**1.** None of these signatures were ever presented to the Secretary of State's office or to the Court at the hearing on October 1, 1986.

*Nevada v. Swackhamer*, 638 F.Supp. 565, 570 (D.Nev.1986). However, in view of the Court's finding that Plaintiffs are not entitled to the equitable relief sought, the Court need not rule upon that issue in this case.

4. The public interest.

Although Mr. Forbes contends that the public interest will be served by granting him the injunctive relief he desires, the Court is not persuaded. Mr. Forbes has failed to show any significant public interest in either the CPP or his senatorial campaign. The Court finds that the public interest would be better served by denying the injunction, for granting it would result in the expenditure of a considerable sum of money and would, in the words of Mr. Fincher, "wreck the system." Furthermore, a state has compelling interests in protecting the integrity of its ballot and in ensuring that a petitioning third party has significant support among the electorate. *Id.* 638 F.Supp. at 568, *citing Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1982). In *Anderson v. Celebrezze*, 460 U.S. 780 at 788, fn. 9, 103 S.Ct. 1564 at 1570, fn. 9, 75 L.Ed.2d 547, the United States Supreme Court stated:

> The State has the undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot, because it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates.

After analyzing all of the *Dataphase* factors in light of the evidence presented herein, the Court is compelled to find that Plaintiffs are not entitled to the preliminary injunctive relief requested.

## II. PLAINTIFF FORBES' CLAIM FOR "EQUAL TIME" AGAINST KTHV-11.

As previously stated, the Court, in its September 9 Order, denied Mr. Forbes' request that certain defendants be directed to include him in the debate between Defendant Bumpers and Defendant Hutchinson.

He now requests, pursuant to 47 U.S.C. § 315 (hereinafter the statute), that KTHV-11 be directed to provide him with free air time of the same quality and quantity as that provided for the debate. KTHV-11, on the other hand, contends that Mr. Forbes is not entitled to equal opportunity under the statute for three distinct reasons.

At the outset, the Court should correct an omission from its Order of September 9. The Court stated "Should Plaintiff Forbes ultimately prove himself to be a 'legally qualified candidate,' he will be entitled to equal broadcast time pursuant to 47 U.S.C. § 315." The Order should have stated "... he will be entitled to *claim* equal broadcast time...." Obviously, the statute requires the threshold finding that the claimant be a "legally qualified candidate" before any inquiry on the merits of the claim may proceed.

KTHV-11 submits that Mr. Forbes is not a legally qualified candidate under Arkansas law, contending that he failed to prove at the hearing that he had notified the election commissioners of each county of his intention to be a write-in candidate no later than 45 days before the November general election. Although the evidence presented on this question was scant, the testimony of Mr. Forbes and Mr. Fincher persuade the Court that Mr. Forbes is a legally qualified write-in candidate under Arkansas law.

KTHV-11 also contends that the debate was exempt from the equal opportunity requirement of the statute by § 315(a)(4), and that this Court lacks subject matter jurisdiction of Mr. Forbes' equal opportunity claim due to his failure to exhaust available administrative remedies. The latter contention is of greater significance here.

47 U.S.C. § 315(d) provides, as follows: "The [Federal Communications] Commission shall prescribe appropriate rules and regulations to carry out the provisions of this section." The Commission has prescribed 47 C.F.R. § 1.41 and §§ 1.701–1.735 to provide for the presentation of com-

plaints against broadcasters for alleged violations of the statute.

It has often been held that one wishing to assert a claim that they have been injured by a broadcaster's violation of the statute must initially seek relief from the Commission. "Indeed, the Commission is the exclusive primary forum in which alleged violations of the [Communications] Act may be vindicated." *Michigan United Conservation Clubs v. CBS News*, 485 F.Supp. 893, 903 (W.D.Mich.1980); *Post v. Payton*, 323 F.Supp. 799, 802 (E.D.N.Y. 1971).

This issue was also addressed in *Cyntje v. Daily News Publishing Co.*, 551 F.Supp. 403 (D.C.V.I.1982). There the Court stated, 551 F.Supp. at 406:

It has been consistently held moreover, that section 315 of the Federal Communications Act does not directly or impliedly create a private cause of action for those aggrieved by the actions of a broadcaster. *See, e.g. Belluso v. Turner Communications Corp.*, 633 F.2d 393, 397–97 (5th Cir.1980); *Daly v. Columbia Broadcasting System, Inc.*, 309 F.2d 83, 85 (7th Cir.1962); *Gordon v. National Broadcasting Company*, 287 F.Supp. 452, 455 (S.D.N.Y.1968). Thus in the absence of evidence that a fairness doctrine complainant initially availed himself of the administrative procedures set forth in 47 C.F.R. § 1.41 (1981) ("Informal requests for Commission action") and thereafter exhausted such steps, the District Court lacks subject matter jurisdiction to adjudicate the matter. 47 U.S.C. §§ 401, 402.

■ In light of Mr. Forbes' failure to make any showing that he has attempted to avail himself of available administrative remedies, the Court finds that it lacks subject matter jurisdiction to adjudicate this matter. Having so ruled, the Court need not address the contention of KTHV–11 that the debate was exempt from the statute.

As indicated at the hearing, all issues will be heard on the merits on October 28, 1986. The evidence and arguments which were presented October 1 on the Motion for Preliminary Injunction will be considered a part of the record at that time and no repetition of those presentations will be necessary. Any party desiring to present exhibits or witnesses at the trial shall advise other counsel in writing with a copy of the correspondence directed to the Court. The exhibits should be identified and names and addresses of potential witnesses should be listed. This information should be furnished to other counsel no later than October 22, 1986. Any party that does not wish to present additional evidence should also file its written motions and/or supplemental briefs on or before October 22, 1986.

### ORDER

Before the Court are a number of motions on behalf of the various parties involved herein. The Court has on two previous occasions denied certain preliminary relief requested by Plaintiffs. First, on September 9, 1986, the Court declined to enjoin Defendants KTHV–11 News, League of Women Voters of Arkansas ("LWV"), United States Senator Dale Bumpers and Republican senatorial nominee Asa Hutchinson from staging a senatorial debate aired on that date unless Forbes was allowed to participate; and, second, on October 8, 1986, the Court found that it lacked subject matter jurisdiction over Forbes' equal time claim against KTHV–11 and, also, refused to order the Secretary of State of the State of Arkansas to have the general election ballots reprinted to include the name of Forbes as the Christian Populist Party ("CPP") candidate for the United States Senate. The Court will dispose of all pending motions in this Order.

Three defendants, the League of Women Voters of Arkansas ("LWV"), Hutchinson and Officers of the Republican Party of the State of Arkansas ("Republican Officers"), have filed motions seeking dismissal of this cause due to defective or insufficient service of process. Plaintiffs contend that all parties to this lawsuit were properly served on September 9, 1986 by an individual by the name of Wilbur B. Hale.

On October 28, 1986, when no responsive pleading had been filed by any of the three aforementioned defendants or Defendant Republican National Committee and Its Affiliates ("Committee"), Plaintiffs filed their Demand for Default Judgment against them.[1] The Court held a hearing on the default demand on November 24, 1986. At that hearing, Plaintiffs stated they would rely on testimony adduced at a previous hearing on October 28, 1986 in which Hale stated that he left copies of a summons and complaint at various locations for the LWV, Hutchinson, the Republican Officers and the Committee. It was brought out that, in each instance, the papers were left with unknown workers in the reception area of each office. A return of service for each defendant appears in the Court's file of this cause.

■ When service of process is challenged, the party on whose behalf service was made must bear the burden of establishing its validity. *Aetna Business Credit, Inc. v. Universal Decor and Interior Design, Inc.*, 635 F.2d 434 (5th Cir.1981). Plaintiffs' testimony revealed that process for Hutchinson and the Committee was left by Hale with a volunteer worker in Hutchinson's campaign headquarters known only to Hale as "Lisa." Plaintiffs do not know the actual identity of this young woman, and there is absolutely nothing to suggest that she was authorized by either party to accept service of process for them. Rather, the testimony was that she was the person occupying the desk where Hale ultimately laid the papers when no one was willing to accept them. Hale further stated that he was unable to learn where or upon whom he should serve these defendants. Such service is obviously insufficient under Rule 4 of the Federal Rules of Civil Procedure and Arkansas law.

■ Hale further testified that he left the papers for the LWV with a secretary in an adjacent office after she told him she often accepted things for them. Uncontro-verted affidavits on behalf of the LWV establish that the secretary had no relationship with the group and no authority to act on their behalf. It also appears that the LWV did not receive a summons in this cause, only a copy of Plaintiffs' Complaint. As before, the service here was legally insufficient.

■ There was testimony at the November 24th hearing that Hale served a woman by the name of Candy Russell with the process for the Republican Officers. At that time, Ms. Russell was a volunteer worker for the Republican Party of Arkansas helping with the arrangements for the Party's state convention. She could not specifically remember accepting service of process from Hale, but the return in the file reflects her name as the person he served. Lynn Blalock, Chairman of the Republican Party of Arkansas, testified that he was not personally served in this cause, nor, to his knowledge, was any other officer of the Party. As the Party officers were named as defendants and not the association, service should have been upon the officers personally. In any event, the Republican Officers have shown that service was made upon Ms. Russell and that she was not authorized to accept service for any other person or entity. Again, the service was obviously not in compliance with the requirements of the law; therefore, the motions to dismiss of LWV, Hutchinson, and Republican Officers are hereby granted. Plaintiffs' claims against them should be dismissed. Further, the Court finds that service upon the Committee was so obviously lacking that the action should be dismissed against it, as well.

Defendants John R. Starr and *Arkansas Democrat* (more properly Little Rock Newspapers, Inc., but herein "the Democrat") have pending before the Court their Motion to Dismiss and Impose Sanctions, to which Plaintiffs responded on October 23, 1986. These Defendants contend that, pursuant to Rule 12(b)(6), they are entitled to

---

1. No pleadings of any kind have been filed on behalf of the Committee, nor has any appear-ance been made.

an Order of Dismissal on account of Plaintiffs' failure to state a claim against them upon which relief can be granted. They also claim that Plaintiffs have failed to state any claim over which the Court has proper subject matter jurisdiction. Finally, these Defendants argue that sanctions should be imposed against Plaintiff due to the complete lack of merit in Plaintiffs' claims against them.

Plaintiffs respond by stating that these Defendants conspired to prevent or impede the objective reporting of news concerning the senatorial campaign of Plaintiff Forbes for the purpose of denying Plaintiffs free and open access to the ballot as candidates and their right to vote for the candidates of their choice. They contend that these rights are protected by the Constitution and that any deprivation of them is actionable under 42 U.S.C. § 1983. Plaintiffs also attempt to state, in a vague manner, claims based on 42 U.S.C. §§ 1971, 1981 and 1985, as well as 18 U.S.C. §§ 241 and 1961.

When deciding a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe the complaint in the light most favorable to the plaintiff and the complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. *Wright v. Anthony*, 733 F.2d 575, 577 (8th Cir.1984). In the instant case, Plaintiffs' allegations against Starr and the *Democrat* are that:

1. "Starr ordered news editors at the Democrat to not publish more than three lines about Plaintiff Forbes and/or his candidacy or they would be fired and directed all employees to not read any statements or releases by Forbes but to wad them up in little balls and throw them in the waste baskets;"

2. Starr, in a live television interview, publicly demanded "that if Defendants LWV, Hutchinson or Bumpers agreed to debate Forbes, the senatorial debate should be cancelled to prevent the voters and potential voters from having the opportunity to evaluate Forbes and his ideas for themselves;" and,

3. "Starr, the Democrat, KTHV–11 and all other major media in the State use [their] unfair disadvantage to claim the Plaintiffs are 'not serious,' 'not credible,' 'fringe candidates,' etc., all of which tends to discourage Plaintiffs' natural constituency from having hopes that even the small 'widows mites' they can afford will be of much help even though every cent counts in this David v. Goliath contest."

■ To state a claim under 42 U.S.C. § 1983, Plaintiffs must allege, first, facts that indicate that some person has deprived them of a federal right and, second, that the person who deprived them of that right did so under the color of state law. *See Monroe v. Pape*, 365 U.S. 167, 171, 81 S.Ct. 473, 475, 5 L.Ed.2d 492 (1961). Taking all the allegations in the complaint against Starr and the *Democrat* as true, the Court must nonetheless find that Plaintiffs have failed to state a claim under § 1983 against these defendants upon which relief can be granted.

Plaintiffs simply have not suffered the deprivation of any federal right at the hands of Starr or the *Democrat*. There is no constitutional right of a citizen to compel a newspaper to publish material which that citizen deems "newsworthy," or which grants a citizen a right to damages if the newspaper chooses not to publish such material when requested. As was noted in *Miami Herald Publishing Company v. Tornillo*, 418 U.S. 241, 258, 94 S.Ct. 2831, 2840, 41 L.Ed.2d 730 (1974):

A newspaper is more than a passive receptacle or conduit for news, comment and advertising. The choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and treatment of public issues and public officials—whether fair or unfair—constitute the exercise of editorial control and judgment. It has yet to be demonstrated how governmental regulation of this crucial process can be exercised consistent with First

Amendment guarantees of a free press as they have evolved to this time.

In *Miami Herald* the Supreme Court struck down a Florida statute that required any newspaper which published negative material regarding a candidate for public office to print, free of charge, whatever reply that candidate wished to make to the newspaper's contentions. "Dictating what a newspaper must print is no different from dictating what a newspaper must not print. The First Amendment stands as a constitutional barrier to either type of interference with the freedom of the press and as a bar to the granting of the type of relief sought by the plaintiff in this case." *South Wind Motel v. Lashutka,* 9 Med.L. Rptr. 1661, 1664 (S.D.Ohio 1983), aff'd 734 F.2d 16 (6th Cir.1984). Nor is there the required allegation that these defendants acted under color of law in their conduct toward plaintiffs. As noted, the Court must find that Plaintiffs have failed to state a claim against Starr and the *Democrat* under § 1983.

■ Plaintiffs have also claimed entitlement to relief under 42 U.S.C. § 1985 as a result of some conspiracy between Starr, the *Democrat* and the other named defendants. However, no specific facts tending to support the existence of any conspiracy are set out in the complaint. Where the allegations of a claim considered as a whole are conclusory and devoid of factual basis, dismissal pursuant to Rule 12(b)(6) is warranted. *McClure v. Esparza,* 556 F.Supp. 569 (E.D.Mo.1983) aff'd 732 F.2d 162 (8th Cir.1984), *cert. denied* 471 U.S. 1052, 105 S.Ct. 2111, 85 L.Ed.2d 477 (1985). Accordingly, this claim, too, must be dismissed.

The complaint is likewise inadequate against these defendants under 42 U.S.C. §§ 1973 and 1981. Claims under § 1973 and § 1981 require a showing of racial discrimination against the claimant. *Carr v. Times Picayune Publishing Corporation,* 619 F.Supp. 94 (D.C.La.1985). Here, Plaintiffs do not, and apparently cannot (Forbes, at least, is white), allege that any person has acted against them on account of their race. For that reason, these claims must also be dismissed.

■ Plaintiffs seek to pursue a claim against these Defendants for a violation of 18 U.S.C. § 241, which makes it a crime for two or more persons to conspire to deprive another of any constitutional right. This cannot be done, for 18 U.S.C. §§ 241, 242 and 245 provide no basis for a civil cause of action. *Aldabe v. Aldabe,* 616 F.2d 1089 (9th Cir.1980); *Dugar v. Coughlin,* 613 F.Supp. 849 (S.D.N.Y.1985).

■ Finally, Plaintiffs claim that they have been damaged by the violation of all Defendants, including Starr and the *Democrat,* of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968. Civil actions under the Act require a showing of a pattern of "racketeering activity" on the part of a defendant, as that term is defined in 18 U.S.C. § 1961(1). The complaint does not allege that any defendant has committed even one of the required predicate offenses set out in § 1961(1). Accordingly, Plaintiffs' RICO claim must be dismissed.

Inasmuch as all of Plaintiffs' claims against them have been found wanting, Starr and the *Democrat* should be dismissed from this cause. However, under the facts and circumstances of this particular case, the Court finds that their Motion for Sanctions should be, and it is hereby, denied.

Starr and the *Democrat* also have pending their motion for an extension of time to respond to Plaintiffs' interrogatories. In light of the Court's rulings herein, Starr and the *Democrat* need not answer the interrogatories. The motion for extension of time is moot and is hereby dismissed.

Inasmuch as the Court has previously ruled that it is without subject matter jurisdiction as to Forbes' claim for equal time on Defendant KTHV–11, and in light of the Court's rulings on the claims previously discussed (which apply with equal force to KTHV–11 and defendant Columbia Broadcasting System), Plaintiffs have no meritorious claim against KTHV–11 or Columbia

Broadcasting System. This lawsuit must be dismissed as against these defendants, also.

The only claim of Plaintiffs left for discussion concerns the constitutionality of several Arkansas election statutes, primarily that relating to the certification of new political parties. As mentioned, the Court has previously ruled that Plaintiffs were not entitled to preliminary injunctive relief. The Court's ruling on the ballot question was largely based upon the Secretary of State's equitable defense of laches due to unreasonable delay on the part of Plaintiff Forbes in requesting the preliminary relief; however, the Court at that time also questioned Plaintiff's standing to challenge the statutes involved herein.

As the Court noted in its October 3 Order, Plaintiffs failed to make any effort to comply with the Arkansas statutes regarding new party certification, choosing only to complain that compliance is impracticable and inconvenient. The Court is not persuaded that there is no set of circumstances under which a person or group may comply with the statutes and succeed in having a new party certified.

The Court previously found that the "CPP is little more than a group consisting of one, sincere, dedicated member (Mr. Forbes) and a handful of unidentified supporters." Forbes has yet to specifically name one other individual who attests, or even desires to be a member of the CPP. Upon the record of this proceeding, the Court must find that, other than in the dreams and aspirations of Forbes, no group or organization known as the "Christian Populist Party of Arkansas" actually exists.

"Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'" *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 757, 70 L.Ed.2d 700 (1982). In *Valley*

*Forge*, a case involving a challenge to a transfer of surplus government property to a church-related college at no cost, the Court went on to note, *id.*, that "... incident to the elaboration of this bedrock requirement, this Court has always required that a litigant have 'standing' to challenge the action sought to be adjudicated in the lawsuit." The Court has also stated that a party seeking to invoke the authority of the court must "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979), as well as that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision," *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450 (1976).

The Court finds that in the instant case Plaintiffs (in effect, Forbes) cannot satisfy any of the cited standing requirements. It has not been shown that Forbes or any other person has suffered any actual or threatened harm traceable to the statutes in question.[2] In 1986, Forbes was not only a write-in candidate for the office of United States Senator, but he also ran unsuccessfully for the Republican nomination for lieutenant governor. Forbes claims that he, and unnamed others, have been injured by not having the CPP certified as a new political party and by not having Forbes' name printed on the general election ballot as a senatorial candidate. The challenged statutes were not the cause of these alleged injuries; rather, the obvious lack of any support for the CPP and the failure of Forbes or any others to expend any appreciable time and effort toward satisfying the statutory requirements were directly responsible for the claimed deprivations.

Plaintiffs suggest that they need not have taken any steps to comply with the

---

**2.** Ark.Stat.Ann. § 3–113(*l*) & –606 (Supp.1985). Although the Court in this Order does not address the merits of Plaintiffs' claims regarding

these statutes, it appears that certain filing deadlines contained therein may be constitutionally suspect.

statutes in order to have standing to challenge their constitutionality. While one can indeed make that argument in good faith, this Court is not persuaded by it. Without so much as a token attempt to comply with the statutes, the Court finds that Plaintiffs do not have standing to bring this claim.

In *Libertarian Party of Nevada v. Swackhamer*, 638 F.Supp. 565 (S.Nev. 1986), it was held that a certain Nevada ballot access statute was unconstitutional as applied to the Libertarian Party of Nevada and officials of that state were enjoined from enforcing it against the Libertarian Party in such a manner as to deny access to the 1986 ballot. However, the Court there went on to state:

> Earlier in this opinion we have taken pains to find that the Libertarian Party of Nevada has by virtue of its history as a recognized minority party in Nevada and its good faith efforts under oppressive statutory requirements to qualify for 1986 demonstrated its standing to complain about Nevada statutory restrictions. No other putative third party has done so. This decision will not grant to any party other than the Libertarian Party of Nevada the right to ballot access for the 1986 elections.

*Id.*, 638 F.Supp. at 570–571. Here, Forbes has done nothing which could even arguably be considered a "good faith" effort to comply with the statutory requirements, as evidenced by his failure to submit any petitions to the Secretary of State and waiting to publicly announce his desire to run for the United States Senate until well after the expiration of all filing deadlines. *Cf. Bergland v. Harris*, 767 F.2d 1551 (11th Cir.1985) (standing found where some efforts toward compliance made). Under these circumstances, the Court holds that Plaintiffs lack the standing required under Article III to challenge the constitutionality of these statutes. *See Valley Forge, supra*, 454 U.S. at 472, 102 S.Ct. at 758. Accordingly, the Motion for Summary Judgment of the Secretary of State is hereby granted and this cause shall be dismissed in its entirety as to him.

In the complaint, Plaintiffs requested that this matter be heard by a three-judge panel pursuant to 28 U.S.C. §§ 2281 and 2284. Although section 2281 of Title 28 to the United States Code was repealed by Congress in 1976, 28 U.S.C. § 2284 does provide for the convening of a district court of three judges when required by Act of Congress or any in any action wherein the constitutionality of the apportionment of a congressional district or statewide legislative body is at issue. Here, upon the facts and circumstances of this case, the Court has not been persuaded that a three-judge court is required and, thus, none has been convened.

By virtue of its rulings on the various motions herein, the Court has found that all of Plaintiffs' claims must either be dismissed, or judgment entered thereon, in favor of all defendants. For that reason, Plaintiffs' Motion for Protection of Write-in Votes and Motion to Compel Adequate Answers to Interrogatories should be, and they are hereby, denied. Any motion not specifically addressed in this Order is now moot and is also denied. Judgment in favor of all defendants shall be entered in conformity herewith.

### JUDGMENT

Pursuant to the Order entered in this matter upon this date, it is Considered, Ordered and Adjudged that this case should be, and it is hereby, dismissed as to all defendants; the relief sought is denied. This dismissal shall be without prejudice as to Defendants Hutchinson, Officers of the Republican Party of Arkansas, Republican National Committee and Its Affiliates, and the League of Women Voters of Arkansas, and with prejudice as to all others. Each party shall bear its own costs.