Templeman v. Philbrick               CV-92-409-B    03/28/94
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE


Andrew Tempelman

     v.                              Civil No. 92-409-B

Robert Philbrick



                            **O R D E R**


     In this action, Andrew Tempelman alleges that Robert

Philbrick, the Milford Town Moderator, illegally interfered with

Tempelman's attempt to obtain secret ballot votes on several

warrant articles at Milford's annual school district and town

meetings.  Tempelman has brought federal claims alleging

violations of 42 U.S.C. § 1983, 18 U.S.C. §§ 241 and 242, and 18

U.S.C. § 1964.  Tempelman has also invoked the court's

supplemental jurisdiction in an effort to raise several state law

claims.  Philbrick now moves for summary judgment pursuant to

Fed. R. Civ. P. 56(a).  For the following reasons, I grant

Philbrick's motion.

                          **I. FACTS**

     In February 1992, Tempelman submitted three articles for

insertion into the Milford School District Warrant.  The first

and second articles exempted "seniors" and "non-users" from

having to pay the school portion of the local property tax.  The third article sought to allow any Milford landowner to avoid having to pay taxes for any line item in the school budget by voting against that line item at the School District Meeting.  The record shows that Tempelman complied with the timing and signature requirements of N.H. Rev. Stat. Ann. 197:6.

On February 10, 1992, Damon Russell, Superintendent of the Milford School District, requested advice from Barbara Reid, Assistant Commissioner for the Department of Revenue Administration, regarding the legality of Tempelman's proposed warrant articles.  Reid advised Russell that the proposed articles were inconsistent with New Hampshire law and, therefore, could not be implemented by a local school district in the absence of legislative authority.  Nevertheless, Reid advised Russell that the school board "must" include the articles in the school district warrant if it found that Tempelman had complied with the petition requirements of R.S.A. 197:6.  As a result, the proposed articles were included in the school district warrant.

Prior to the school district meeting on March 7, 1992, Philbrick was notified of the inclusion of Tempelman's three additional articles in the warrant.  Philbrick was also apprised of the advice given by Assistant Commissioner Reid to

2

Superintendent Russell. In addition, Philbrick sought the advice of William Drescher, Town Counsel, who agreed that the articles were illegal. At the meeting, Philbrick informed the assembly of voters of this information and he then declared the articles to be illegal. Philbrick then called for a vote on his ruling. He explained to the assembly that if it upheld his ruling, the meeting would take no further action on the three warrant articles; and that if the assembly overruled his decision, the meeting would address each of the three articles in turn. The ballot was taken and the assembly upheld Philbrick's ruling by a vote of 596 to 91.

Tempelman also submitted two articles for inclusion in the Annual Town Meeting Warrant. The first article would have allowed Milford landowners to avoid having to pay taxes for any line item in the Town's budget by voting against that line item. The second article sought to limit the legal fees of Town Counsel to $10,000 per year. The articles complied with N.H. Rev. Stat. Ann. 39:3 and, therefore, were included in the warrant.

On February 12, 1992, Lee Mayhew, the Town Administrator, requested Attorney Drescher's opinion as to the legality of the two warrant articles. Drescher advised Mayhew that the first article was illegal and beyond the authority of a town meeting to

enact. With respect to the second article, Drescher informed Mayhew that it was the proper subject for a town meeting vote.

Prior to the March 10, 1992 town meeting, Philbrick was informed of Tempelman's two warrant articles. He was also advised of Drescher's opinion that the first article was illegal and beyond the town meeting's authority. At the town meeting, Philbrick informed the assembly of this information and ruled that the first article was off the warrant. Philbrick then stated that because Tempelman had lawfully petitioned for a secret ballot on the article, Tempelman would either have to withdraw his petition, or a vote would have to be taken on Philbrick's ruling. Initially, Tempelman refused to withdraw the article, but ultimately he agreed to withdraw it based on Philbrick's ruling. Nevertheless, Philbrick called for a vote on his ruling. The vote was taken and the assembly upheld the ruling by a tally of 378 to eight. As a result, Philbrick declared the article off the warrant and proceeded on to other matters.

When Philbrick presented the second article, he told the assembly that the petition had the requisite number of signatures to require the town to vote by ballot on the article. The moderator requested that one of the petitioners withdraw their

4

signature so that a ballot would not have to be taken.  Sharon Holcombe agreed to withdraw her signature.  The article was then put to a voice vote and unanimously defeated.

## II. **DISCUSSION**

A.  <u>Arguments</u>

Tempelman raises four federal claims.  His first claim is that he is entitled to damages pursuant to 42 U.S.C. § 1983 because Philbrick's rulings on the warrant articles violated his First Amendment right to petition government for redress of grievances.  Tempelman's second and third claims allege a conspiracy to deprive him of his civil rights and an actual deprivation of those rights under color of law, in violation of 18 U.S.C. §§ 241 and 242.  Tempelman's final argument is that Philbrick violated provisions of the Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. § 1964, by engaging in a pattern of racketeering activity.

B.  <u>Standard of Review</u>

The standard for granting summary judgment is well settled.  Under Federal Rule of Civil Procedure 56(c), summary judgment is rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

5

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.  <u>Oliver v. Digital Equipment Corp.</u>, 846 F.2d 103, 105 (1st Cir. 1988) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 106 S.Ct. 2505, 2510 (1986)).  The First Circuit has defined "genuine issue of material fact" as that which "might affect the outcome of the suit under the governing law."  <u>Rossy v. Roche Products, Inc.</u>, 880 F.2d 621, 624 (1st Cir. 1989) (citations omitted).  The party who moves for summary judgment bears the burden of showing that there is no genuine dispute concerning facts which are material to the issues raised in the pleadings.  <u>General Office Products Corp. v. A.M. Capen's Sons, Inc.</u>, 780 F.2d 1077, 1078 (1st Cir. 1986).  The opposing party cannot defeat summary judgment by mere allegations but must produce "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties differing versions of the truth at trial."  <u>Id.</u> (quoting <u>Hahn v. Sargent</u>, 523 F.2d 461, 464 (1st Cir. 1975), <u>cert. denied</u>,

6

425 U.S. 904 (citation omitted).

C. <u>Section 1983 Claims</u>

It is beyond question that "the right of the people . . . to petition the government for a redress of grievances" is a vital aspect of our constitutional democracy. <u>See</u> <u>generally</u>, <u>McDonald v. Smith</u>, 472 U.S. 482, 483 (1985). Nevertheless, this important right has never been construed to include a corresponding duty on the part of the government to act on a petition once it is received. <u>Minnesota State Board for Community Colleges v. Knight</u>, 465 U.S. 271 (1984) ("A person's right to speak is not infringed when government simply ignores that person while listening to others."). <u>See also</u>, <u>Stengel v. Columbus</u>, 737 F. Supp. 1457, 1459 (S.D. Ohio 1988); <u>Gordon v. Heimann</u>, 514 F. Supp. 659, 661 (N.D. Ga. 1980).

In this case, Tempelman sought to petition both the school district meeting and the town meeting. In both cases, his petitions were considered by the very governmental bodies to whom the petitions were addressed. He has no right under the First Amendment's petition clause to compel a governmental body to act on a request which that body determines is unlawful. Nor does the First Amendment guarantee a citizen an opportunity to have his or her petition acted on either by a secret ballot or without

7

the benefit of advice from other persons concerning the legality of the matters addressed in the petition. If Tempelman has a basis for relief in this case, it exists as a matter of state law.

D.   Section 241 and 242 Claims

18 U.S.C. §§ 241 and 242 are criminal statutes that make no provision for private causes of action. As a result, Tempelman's reliance on those provisions is misplaced. See, Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980); Powers v Karen, 768 F. Supp. 46,51 (E.D.N.Y. 1991); Lovelace v. Whitney, 684 F. Supp. 1438, 1441 (N.D. Ill. 1988); Christian Populist Party v. Secretary of State, 650 F. Supp. 1205, 1214 (E.D. Ark. 1987); Fiorino v. Turner, 476 F. Supp. 962, 963 (D. Mass. 1979). Accordingly, these claims must be dismissed.

E.   RICO Claim

Tempelman bases his civil RICO claim on the contention that Philbrick engaged in a pattern of malicious, dictatorial and vengeful activity in order to publicly humiliate him and deter him from suggesting better ways to raise public revenues. After reviewing the record in a light most favorable to Tempelman, I find that he has failed to demonstrate that he has a triable RICO claim.

8

The First Circuit Court of Appeals has stated that "particular care is required [in considering civil RICO claims] to balance the liberality of the Civil Rules with the necessity of preventing abusive or vexatious treatment of defendants." Miranda v. Ponce Federal Bank, 948 F.2d 41, 44 (1st Cir. 1991). Accordingly, a civil RICO plaintiff must demonstrate, in response to a properly supported motion for summary judgment, that a triable issue exists as to whether the defendant participated in "specific instances of racketeering activity within the realm of the RICO statute." See id. (discussing standards for pleading a civil RICO claim). The term "racketeering activity" encompasses a variety of specific types of criminal activity. See 18 U.S.C. § 1961(1). However, the record is devoid of any evidence suggesting that Philbrick committed any crimes qualifying under this definition.

F.    Pendent State Claims

Having disposed of Tempelman's federal claims, I decline to exercise my discretion to retain supplemental jurisdiction over the remaining state claims. 28 U.S.C. § 1367(C)(3); Blake v. Dickason, 997 F.2d 749 (10th Cir. 1993). Accordingly, these claims are dismissed without prejudice.

9

## CONCLUSION

Based on the foregoing, Robert Philbrick's motion for summary judgment (document no. 41) is granted insofar as the motion applies to Tempelman's federal claims. Tempelman's pendent state claims are dismissed without prejudice.

The clerk is instructed to issue judgment for the defendant in accordance with this order.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

March  28, 1994

cc:  Andrew Tempelman
     Mark D. Wiseman, Esq.
     Warren C. Nighswander, Esq.